Michael Lyn WAELTZ *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

CA 88-252                                                          768 S.W.2d 41

Court of Appeals of Arkansas
Division I
Opinion delivered April 19, 1989

*Richard S. Hardwicke*, for appellant.

*Dianne C. Boyd*, Ass't Gen. Counsel, Office of Gen. Counsel, Arkansas Dept. of Human Services, for appellee.

GEORGE K. CRACRAFT, Judge. Michael Lyn Waeltz appeals from an order of the probate court terminating his parental rights and ties to his three children, and appointing the Arkansas Department of Human Services as guardian of their persons and estates with authority to consent to their adoption. The natural mother of the children entered her consent to such an order and is not involved in this appeal. We find no error and affirm.

At the hearing, the Arkansas Department of Human Services presented evidence of continued physical and sexual abuse of the children by their father, for which they had been removed from his custody and placed in foster care on at least two occasions. According to the two minor daughters, age ten and nine respectively, the appellant had been sexually abusing them for some period of time. There was evidence from a foster parent that when the children were placed with her they were filthy and that one of the children had head lice and impetigo "from the top of her head to her ankles." She stated that it was apparent that their teeth had not been cared for and that they required extensive dental care. Appellant testified in his own behalf and admitted that he was presently serving time in the Arkansas Department of Correction for the sexual abuse of his children. There was evidence of constant care and counselling by the Department of Human Services and proof that all of the jurisdictional requirements for the entry of an order terminating parental rights and appointment of guardian with right to consent had been complied with prior to filing of the petition. The probate judge found that those facts warranting a termination of appellant's parental rights had been proved by evidence that was more than clear and convincing.

Appellant first contends that the trial court erred in not striking the testimony of the nine-year-old child because she was not sworn before she gave her testimony. Without objection by the appellant as to the competence of this witness or an assertion that she had not been duly sworn, the child was permitted to testify to various acts of physical and sexual abuse to which she had been subjected by her father. At the conclusion of her direct examination, appellant moved to strike her testimony because "I

don't believe there was ever any indication she was under oath or under the impression that she should tell the truth until after all her testimony was finished." Although the record recites that before the witness testified she was first "duly sworn according to law," the trial judge further inquired as to her qualifications as a witness, her ability to know the difference between truths and falsity, and her moral obligation to tell the truth. She answered a number of questions, convincing him that she did know the difference between the truth and a lie, and was aware of her moral obligation to tell the truth. The judge asked her whether she understood that it was very important that she tell only the truth and whether she promised that everything she had said had been the "honest to goodness truth." The witness nodded her head affirmatively in response to both questions.

In its ruling, the court stated:

I want the record to reflect in the case of each of these minor witnesses the Court determined after hearing their testimony and watching these children, the manner in which they testified, their reactions at various points, that the administering the oath or requiring them to take the oath was not necessary. The combination of what they said in response to the questions about truth and lies, as well as the manner in which they testified and their demeanor, I concluded the administration of the oath was not necessary or that they be formally qualified *in the sense that we ordinarily qualify witnesses.*

(Emphasis added.) We conclude that there was no error.

██ In *Hudson v. State*, 207 Ark. 18, 179 S.W.2d 165 (1944), the court, on facts peculiarly similar to those here present, stated that no prescribed form of oath is essential if the witness, with knowledge of the consequences of false testimony, understands and assents to the proposition that the testimony she gives will not be false. No particular words must be used, and any language "fairly susceptible of being construed as an acceptation of the Court's authority, coupled with an understanding of the moral aspect" should not be treated with less dignity than the "familiar words of intonation of an administering officer whose principal purpose is to see that a record is 'regular.'" *Id.* at 27, 179 S.W.2d at 170.

■ Here, the testimony of the child correctly stated facts concerning herself, her family, and their relationships. She had clear recollection of prior events and correctly stated the school that she attended and the names of her teachers for the past two years. We find nothing that would indicate that she did not have the ability to receive or retain accurate impressions. She demonstrated that she did have a capacity to transmit a reasonable statement of the times, places, and forms of sexual abuse to which she had been subjected by the appellant. She established that she understood her moral obligation to tell the truth and that she would be punished if she did not do so. She also affirmed to the trial judge that all of her prior testimony had been true. Moreover, on cross-examination thereafter, she reaffirmed all of her prior testimony concerning the sexual abuse. Even if we were to conclude that the recital in the record that the child was in fact sworn before testifying was incorrect, we could not conclude that the trial court's denial of the motion to strike on these grounds was erroneous.

At the trial, a representative of Suspected Child Abuse and Neglect (SCAN), who interviewed the children in 1983 and again at the time they were removed from the appellant's home immediately prior to this hearing, testified that at the time she first saw the children she was investigating bruises on one child alleged to have been caused by physical abuse. She testified that at that time appellant admitted to her that he had caused the bruises on the child by spanking her. The worker introduced four photographs which showed substantial bruising on the child's face, chest, buttocks, and legs. Although the appellant testified at this hearing that he did not cause the bruises, the SCAN worker testified that he admitted it to her at the time. Due to the extent of the bruising shown in those pictures the child was placed in foster care.

■ The determination of the relevance of evidence is within the sound discretion of the trial court, and that determination will not be reversed in the absence of an abuse thereof. *Hallman* v. *State*, 288 Ark. 448, 706 S.W.2d 381 (1986). Here, we cannot agree that either this testimony or the photographs were too remote in time. There was evidence that the pictures were true and accurate representations of the condition of the child at that time; that the children were placed in foster care for a

period of time as a result of that action; and that after they were returned from foster care on that occasion the abuse continued. In making a decision of whether to terminate the parental rights of a party, the trial court had a duty to look at the entire picture of how that parent discharged his duties as a parent, the substantial risk of serious harm the parent imposed, and whether or not the parent was unfit. Nor can we conclude from our examination of the photographs that they were merely inflammatory. Rather, they simply showed the extent of injury to the child's body. They were relevant to both the fitness of appellant as a parent and the risk of serious harm imposed by him. We find no abuse of discretion in the admission of this evidence.

During the interrogation of the foster mother of one of the children, she stated that the child was a bed wetter. She also stated that a physician had told her that there was no physical reason why he should not stop wetting the bed with the medication that he was taking. Appellant objected, contending that it was improper hearsay and gave rise to an inference that psychological problems had caused the bed wetting. The foster parent made no other statement or comment at that time which would give rise to any implication that the child was suffering from psychological problems caused by the appellant's actions. In other testimony, however, the foster mother of the other children was permitted to testify, without objection, that she had taken the children to a doctor to find out about their bed wetting and that "he told me it was psychological." We agree with the appellee that it is not reasonable to argue that the case should be reversed simply because hearsay testimony that might imply psychological problems was admitted in one instance where there was no objection to similar testimony in which it was directly stated that a psychological problem did exist.

For the same reason, we find no error in the court's admission of testimony that the son told a foster parent that appellant had sexually abused his children and that his stepmother had "pulled [appellant] off one of the little girls." This testimony was elicited from one of the last witnesses presented by the appellee. The record is replete with testimony of social workers who, prior to that time and without objection, were permitted to relate in detail statements of the children as to the sexual and physical abuse by their father. The hearsay statement

about which appellant now complains was merely cumulative of prior statements already in the record without objection.

Affirmed.

MAYFIELD and ROGERS, JJ., agree.