Tommy CRAWFORD *v*. ARKANSAS DEPARTMENT OF
HUMAN SERVICES

97-241                                          951 S.W.2d 310

Supreme Court of Arkansas
Opinion delivered October 9, 1997

*Clark Law Firm*, by: *Jim Clark*, for appellant.

*Office of Chief Counsel,* by: *Johnny E. Gross,* for appellee.

ROBERT L. BROWN, Justice. This case arises out of the court-ordered termination of the parental rights of appellant Tommy Crawford. The record contains almost three and a half years of matters before the chancery court, juvenile division, and other agencies following the original call to law enforcement officers caused by a domestic disturbance at Crawford's home in January of 1993. At that time, Crawford was living with his girlfriend, Mary Cross, who was still married to Bobby Cross. Also living in the house were four minor children. Two of the children, Tequilla Cross and Melissa Cross, were the natural children of Mary Cross and Bobby Cross. The other two children, Justin Crawford (now age 9) and James Crawford (now age 7), were the biological children of Mary Cross and Crawford. The parental rights of Bobby Cross, Mary Cross, and Tommy Crawford were terminated with respect to all four children. This appeal, however, concerns only the termination of the parental rights of Tommy Crawford with respect to James and Justin Crawford. We affirm the order of termination.

On January 30, 1993, the Benton County Sheriff's Office responded to a report of domestic violence at the home of Crawford and Mary Cross. The subsequent investigation resulted in two proceedings. The first was a criminal proceeding which resulted in a plea of guilty by Crawford to Violation of a Minor in the First Degree, a class C felony. The victim of this offense was Mary Cross's daughter, Tequilla Cross. Crawford was sentenced to ten years in prison with five years suspended.

The second proceeding was in chancery court, juvenile division, and concerned placement of the four children in the care of appellee Arkansas Department of Human Services (DHS) because of allegations of abuse and allegations that the children were dependent-neglected. On February 22, 1993, DHS filed a petition for emergency custody, following which the two daughters, Melissa and Tequilla Cross, were removed from the home of Mary Cross. The two boys, James and Justin, remained with their mother. At the adjudication hearing held on March 30, 1993, Tequilla Cross testified about the circumstances at the home before

she was removed from the home and placed in foster care. She testified that Mary Cross and Crawford, as well as their friends, drank alcohol daily and regularly smoked marijuana, all of which took place in front of the children.

After the initial disturbance and allegations of sexual abuse on January 30, 1993, Crawford did not reside with the children or Mary Cross. On May 16, 1993, a restraining order was issued enjoining Crawford from having any contact with the children or with Mary Cross. In September of 1993, DHS established a case plan, with the stated goal being reunification of the family. An adjudication order was entered on November 23, 1993, wherein the two boys, James and Justin, were found to be dependent-neglected, following a stipulation by counsel to the same effect made on May 13, 1993.

Following a hearing on December 7, 1993, Crawford was allowed visitation with his sons for one hour a week under super-vision of DHS. He was ordered to pay child support in the amount of $32.00 per week and to pay half of the boys' medical bills. The chancery court later raised the amount of child support to $35.00 a week on August 11, 1994. Crawford participated spo-radically in supervised visitation with his sons for almost a year while the boys were still living with Mary Cross. On April 1, 1994, Justin and James Crawford were ordered placed in foster care along with their half-sisters, Melissa and Tequila Cross.

According to DHS reports, Crawford stopped scheduling vis-its with his sons and had no contact with them from November of 1994 to April 28, 1995. In addition, he never paid the court-ordered child support. Crawford, in his own testimony, admitted that he was aware of the chancery court's order to pay child sup-port, but he did not pay it. He said that he bought his boys clothes instead. The DHS reports reflect that Crawford and Mary Cross failed to make sufficient efforts to improve their condition and to establish a home for the children.

Crawford began serving his prison term in May of 1995 for the sexual abuse of Tequilla. He was in prison for over a year before the final hearing on termination of his parental rights, which was held on July 11 and 12, 1996. During that time, he

wrote a total of three letters to his children. He refused to attend counseling for sexual offenders while in prison and continued to deny molesting Tequilla in spite of his guilty plea. He claimed to have mistaken Tequilla for Mary Cross, while he was in a drunken state.

On August 16, 1996, an order terminating the parental rights of Mary Cross, Bobby Cross, and Tommy Crawford was issued by the chancery court. The court found that DHS had proven by clear and convincing evidence that the children had been residing outside the home for more than one year and that, despite meaningful efforts by DHS to rehabilitate the home and correct the conditions which caused removal, the conditions had not been remedied. The court further found that DHS had proven by clear and convincing evidence that Crawford had failed to provide significant material support to his sons or to maintain meaningful contact with them.

█ Crawford argues on appeal that there were insufficient efforts by DHS to rehabilitate him and that the evidence in this case was not clear and convincing. Our caselaw has established that termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Anderson v. Douglas,* 310 Ark. 633, 839 S.W.2d 196 (1992). Parental rights, however, will not be enforced to the detriment or destruction of the health and well being of the child. *Burdette v. Dietz,* 18 Ark. App. 107, 711 S.W.2d 178 (1986).

The relevant statute, Ark. Code Ann. § 9-27-341 (Supp. 1995), provides in part:

> (b) . . . An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
> (1) That it is in the best interest of the juvenile;
> (2) Of one or more of the following grounds:

> (A) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months, and, despite a meaningful effort by the Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent . . . .

(B) The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile. To find willful failure to maintain meaningful contact, it must be shown that the parent was not prevented from visiting or having contact with the juvenile by the juvenile's custodian or any other person, taking into consideration the distance of the juvenile's placement from the parent's home. Material support consists of either financial contributions or food, shelter, clothing, or other necessities where such contribution has been requested by the juvenile's custodian or ordered by a court of competent jurisdiction.

Ark. Code Ann. § 9-27-341(b)(2) (Supp. 1995).

As the statute states, the facts warranting termination of parental rights must be proved by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, this court will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. Ark. R. Civ. P. 52(a); *Anderson v. Douglas*, 310 Ark. 633, 637, 839 S.W.2d 196, 198 (1992). Clear and convincing evidence is that degree of proof which will produce in the factfinder a firm conviction regarding the allegation sought to be established. *Anderson v. Douglas, supra*; *Cobbins v. State*, 306 Ark. 447, 816 S.W.2d 161 (1991). Furthermore, this court will defer to the trial court's evaluation of the credibility of the witnesses. Ark. R. Civ. P. 52(a); *Anderson v. Douglas, supra*.

We first note that § 9-27-341(b)(2)(A) does not speak in terms of efforts by DHS to rehabilitate individuals like Crawford but rather the home as a whole. Regardless of that distinction, there is a second ground for termination of parental rights under § 9-27-341(b)(2)(B). Rights may be terminated if the juvenile has lived outside the home of the parent for twelve months and the parent has willfully failed to provide significant material support to his children as ordered by the chancery court and to have meaningful contact with them. It is on this finding by the chancery court that we base our affirmance.

In November of 1993, Crawford was given the opportunity to have supervised visitation with his two sons on a weekly basis.

He visited with them for a time, but eventually quit contacting them altogether in November of 1994. This lack of contact continued at least until April 28, 1995 — the date of a DHS report on the matter. Crawford admitted lack of contact with his sons, and his explanation was that he wanted the children to get used to his not being around because he was going to prison. We give this reasoning little credence. In addition, Crawford was ordered to pay child support in the amount of $32.00 a week and then $35.00 a week. He failed to make any child-support payments. We agree with DHS that evidence abounded that Crawford had not paid support or had meaningful contact with his sons. Nor was the prognosis very good that this situation would change due to Crawford's incarceration.

■ Moreover, at the time of the final Review Hearing, Crawford was in prison for his crime against Tequilla Cross. Although imprisonment imposes an unusual impediment to a normal parental relationship, we have held that it is not conclusive on the termination issue. *Bush v. Dietz*, 284 Ark. 191, 680 S.W.2d 704 (1984); *Zgleszewski v. Zgleszewski & Horne*, 260 Ark. 629, 542 S.W.2d 765 (1976). In the instant case, nevertheless, imprisonment undoubtedly had a bearing on the trial court's decision for two reasons: the nature of the crime itself, which was violation of a minor; and the fact that Crawford was not going to be available to care for his sons during his term of imprisonment, which could be as long as four additional years. There is also the factor that throughout their time in foster care, the sons appear to have been improving in every respect. Their grades at school improved. The case worker noted that they spoke less violently and acted more behaved. Tequilla testified that she hoped that they all could return home one day, but only if Crawford would stay away. She said that she thought the boys were in danger when he was around. Later, she wrote a letter to the chancery court and stated that she believed it would be best for everyone if all of the children remained in foster care. In closing arguments, the guardian *ad litem* for the boys stated that she would not make a recommendation about terminating parental rights, but she wanted to relay what she observed from the children. She said that the two boys were calling their foster parents "mom" and "dad" and they liked

where they were. In recounting these circumstances, we are mindful of the policy expressed in § 9-27-341(a) relating to termination of parental rights:

> The intent of this section is to provide permanency in a juvenile's life in all instances where return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time.

We conclude that the chancery court appropriately found clear and convincing evidence that the two sons lived apart from Crawford for twelve months and that he failed to provide monetary support for them or to make sufficient contact with them. We, therefore, affirm the termination of parental rights.

Affirmed.