## Allen HENDERSON *v.* Dorothy CALLIS

CA 06-352                                    245 S.W.3d 174

### Court of Appeals of Arkansas
### Opinion delivered December 13, 2006

*Don R. Etherly*, for appellant.

*Vandell Bland, Sr.*, for appellee.

WENDELL L. GRIFFEN, Judge. Allen Henderson appeals from an order granting appellee Dorothy Callis's petition to adopt his son, A.H., and terminating appellant's parental rights with regard to his son. He argues that the trial court erred in terminating his parental rights because the court's determination was based solely on the fact that he is or has been incarcerated. We agree and reverse the trial court's order.

This appeal results from appellee's petition to adopt A.H., who was born out of wedlock on August 30, 1999, to appellant and Racquel Mitchell. In her petition, appellee stated that she had been the child's guardian since June 20, 2001; that she had the necessary resources to provide for A.H.; and that appellant and Mitchell were incarcerated. Appellant answered, requesting that the petition be dismissed.

Only appellant and appellee testified at the August 12, 2005 hearing on the petition to adopt. Their testimony established the following facts. Appellant and Mitchell began living together two weeks before A.H. was born; appellant purchased approximately $200 in clothing for the child prior to his birth. Three or four days after A.H. was born, appellant was incarcerated for aggravated robbery and possession of a firearm. He was sentenced to serve ten years in prison and is eligible for parole in December 2006. The trial court acknowledged that, during his incarceration, appellant contacted numerous governmental entities in an attempt to locate his son. He also filed three petitions to establish custody and registered with the Putative Father Registry.

Despite appellant's efforts, he was unable to contact his son and thus, has had no contact with the child since he was incarcerated. Nor has appellant provided any support for his son since he was incarcerated. Appellant admitted that he currently has no means to support his child but testified that, once he is released, he can provide for A.H. Appellant also volunteered to pay child support upon his release. He explained that when he committed the robbery he had no direction or guidance in his life, but insisted that "now I do" and that he was now "a more-spiritually inclined individual." He asked the court to look at the man he is now and the man he intends to be in the future.

Appellee was appointed as A.H.'s guardian in January 2001, when the child was approximately fifteen months old, and he has remained in her custody since then. She conceded that she knew that appellant was incarcerated in an Arkansas facility and that Mitchell was incarcerated in Florida or Tennessee. However, appellee neither attempted to find out precisely where the parents were located nor attempted to contact them. She admitted that appellant sent her a letter during the summer of 2005, after he was notified of the adoption petition, to which she did not respond.

During the hearing, appellant moved to dismiss the adoption petition, arguing that his inability to provide for his son because he was in prison is not a sufficient ground on which to grant the petition, especially where he made diligent efforts to contact his son and where he was due to be released on parole in sixteen months. Appellee responded that she had been the child's sole caretaker since 2001; that appellant was only eligible for parole in 2006 and did not have a transfer date until 2007; that appellant had proven throughout A.H.'s life that he cannot care for him; and that the possibility appellant would provide a stable home for his child

was "bleak at best." She also argued that it was in A.H.'s best interest to solidify the bond that had formed between them.

The trial court stated orally that it was inclined to grant the petition because the child was "entitled to a permanent situation." However, the court withheld judgment on appellant's motion to dismiss. Appellant submitted a posttrial brief, arguing that the petition for adoption should be denied because appellee had not shown by clear and convincing evidence that his rights should be terminated; he also argued that his consent to the adoption was required because his failure to support and contact his son was not willful, as demonstrated by his numerous attempts to contact A.H.

The trial court subsequently entered a memorandum opinion in which it granted the adoption petition. Due to appellant's various attempts to contact his son, the court determined that appellant's consent to the adoption was necessary but that appellant unreasonably withheld his consent. The court reasoned:

> The Respondent here has been incarcerated for approximately eight-and-one half (8 ½) years between the ages of 17-26. He will not be eligible for parole until December 2006 and with a transport date in April 2007, if he is awarded parole. The child, Allen, is now six years of age. By the time the Respondent may be released from his present sentence, the child will be almost eight years [old]. The majority of this time has been in the home of the Petitioner. According to the testimony of Ms. Callis, the child has thrived in her home.

> The court finds that it is in the best interest of the child, that the parental rights of the Respondent be terminated. The Court specifically finds that the consent of the non-custodial parent was unreasonably withheld.

The court subsequently entered an order terminating appellant's parental rights.

The trial court ordered termination pursuant to Arkansas Code Annotated § 9-9-220(c)(3) (Supp. 2005), which authorizes a trial court to order termination where a parent who does not have custody unreasonably withholds consent to adopt. The facts warranting termination of parental rights must be proved by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, this court will not reverse unless the court's finding is clearly erroneous. *See Crawford v. Ark. Dep't of Human Servs.*, 330

Ark. 152, 951 S.W.2d 310 (1997). Clear and convincing evidence is that degree of proof which will produce in the factfinder a firm conviction regarding the allegation sought to be established. *Id.* Furthermore, this court will defer to the trial court's evaluation of the credibility of the witnesses. *Id.*

We hold that the trial court erred in granting the adoption petition and in terminating appellant's parental rights merely because he was or has been incarcerated. Affirming the trial court in this case would require us to hold that, where the child of an incarcerated parent is in the court-ordered custody of another person, that parent has an obligation to consent to the adoption of the child merely because the parent is incarcerated and because the child has thrived in the custody of its guardian, even where the parent has undisputedly and actively attempted to establish contact with and to claim paternity of the child.

Although imprisonment imposes an unusual impediment to a normal parental relationship, it is not conclusive on the termination issue. *See id.* Rather, in deciding whether to terminate the parental rights of a party, the trial court has a duty to look at the entire picture of how that parent has discharged his duties as a parent, the substantial risk of serious harm the parent imposes, and whether or not the parent is unfit. *In re Adoption of K.M.C.*, 62 Ark. App. 95, 969 S.W.2d 197 (1998). Here, appellant did everything a parent in his situation could do to establish and maintain a relationship with his son. Thus, this is not a situation in which the parent refused to have contact with his child while incarcerated or exercised visitation in an inconsistent manner so as to threaten the child's sense of stability.

Moreover, appellant is not deemed to be unfit simply because he is incarcerated, and there is no evidence that appellant poses a risk to his son. The only evidence is that he purchased clothing for A.H. before he was born and thereafter consistently sought to contact his son — actions consistent with a parent who is making a good-faith effort to discharge his parental duties. There are no facts in the record showing that the child would suffer any untoward effect by allowing him to establish a relationship with his father. There is no evidence showing that the child would be adversely affected by knowledge of or association with his father. Even if appellant is not paroled as anticipated, he should be given the opportunity to develop the relationship with his son that he has so ardently worked to establish.

Unless the appellant has been divested of parental rights, appellee, as A.H.'s guardian, has a moral and legal obligation to refrain from engaging in conduct that alienates the child from appellant or that severs the parent–child relationship. However, the record before us shows that appellee consciously took no action to contact appellant regarding the location and welfare of his son even though she knew appellant was located in one of Arkansas's prisons. Yet, she apparently had no trouble finding appellant when she needed his consent to adopt his son.

On these facts, the record contains no showing that appellant unreasonably withheld his consent. Appellant has no obligation to consent merely because he is incarcerated or even because appellee does not want to communicate with him or have the child exposed to him. Even if appellant had consented to the guardianship, he would not have forfeited his parental rights in so doing. *See In re Guardianship of Markham*, 32 Ark. App. 46, 795 S.W.2d 931 (1990). Accordingly, we reverse the trial court's order granting appellee's adoption petition and terminating appellant's rights.

GLADWIN, BIRD, and ROAF, JJ., agree.

PITTMAN, C.J., and GLOVER, J., dissent.

JOHN MAUZY PITTMAN, Chief Judge, dissenting. Appellant argues that the trial court erred in finding that he was unreasonably withholding his consent to adoption. I would affirm.

This is not a case in which termination of parental rights was based solely on the appellant's incarceration. In determining that appellant was unreasonably withholding his consent, the trial judge noted that appellant was not married to the child's mother and had lived with her and the child for only three days before he was incarcerated for aggravated robbery and sentenced to ten years' imprisonment. She also noted that, although he was only twenty-six years of age, appellant had been imprisoned twice, served over eight years in prison between the ages of seventeen and twenty-six, and was still imprisoned at the time of the hearing. Finally, she noted that appellee had cared for the six-year-old child since he was fifteen months of age.

Appellant's argument is premised on the sanctity of his parental rights. However, the parent–child relationship is not one-sided; a parent's rights are based on his fulfillment of the correlative duties of parenthood. At a minimum, the obligations of

parenthood require that a parent express love and affection for the child; express personal concern over the health, education and general welfare of the child; supply necessary food, clothing and medical care; educate the child; give social and religious guidance; and provide an adequate home. *Harper v. Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979). Although a parent's imprisonment, standing alone, does not automatically require termination of parental rights, appellant in the present case has been repeatedly imprisoned since he was a teenager for highly antisocial behavior. Past actions over a meaningful period are good indicators of what the future may be expected to hold, *In re Adoption of K.M.C.*, 62 Ark. App. 95, 969 S.W.2d 197 (1998), and the trial court has a duty to look at the entire picture of how the parent discharged his parental duties. Here the record shows that, although appellant has exerted himself somewhat to establish his parental rights, he has done nothing to discharge his parental duties.

I respectfully dissent.

DAVID M. GLOVER, Judge, dissenting. I respectfully dissent for two reasons. Initially, I question whether this is a final and appealable order because the last paragraph of the order terminating appellant's parental rights states, "That the issue of the necessity of the consent of the biological mother, Ms. Raquel Mitchell, is reserved by this court." In *Ford Motor Co. v. Harper*, 353 Ark. 328, 330, 107 S.W.3d 168, 169 (2003) (citations omitted), our supreme court held:

> Whether a judgment, decree, or order is final is a jurisdictional issue that this court has a duty to raise, even if the parties do not, in order to avoid piecemeal litigation. Where no final or otherwise appealable order is entered, this court lacks jurisdiction to hear the appeal. In order for a judgment to be final and appealable, it must dismiss parties from court, discharge them from the action or conclude their rights to the subject matter in the controversy.

Arkansas Rule of Appellate Procedure – Civil 2 delineates orders that are considered to be appealable matters. I am unable to place this order into any category under that rule. Clearly this adoption could not be finalized without the determination of whether the consent of the child's biological mother is necessary. Also, a certificate pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure was not attached to the order. Rule 2(c)(3)(C) provides that the termination of parental rights is a final appealable order in juvenile cases where an out-of-

home placement has been ordered. This case, however, is a probate case, not a juvenile case; therefore I do not believe that subsection (c)(3)(C) is applicable. Procedurally, I can find no basis for construing this order to be a final appealable order when the trial court "reserves" the question as to whether the biological mother's consent is necessary.

Contrary to my analysis, the majority finds no problem with the finality of the order and reverses the trial court's finding that appellant's consent, although necessary, was being unreasonably withheld. If I reached the merits of this case, which I decline in reliance on Rule 2, I would affirm the decision of the trial court, which found that appellant was unreasonably withholding his consent for adoption and terminated appellant's parental rights.

The trial court correctly found that appellant's consent to the adoption was required because, in taking into consideration the resources available to appellant in prison, he had attempted to make contact and establish a bond with his son; had contacted the putative-father registry; and had otherwise attempted to establish paternity. The trial court next turned to the question of whether appellant, as a parent not having custody of the child, was unreasonably withholding his consent contrary to the best interests of the child in violation of Arkansas Code Annotated section 9-9-220(c)(3) (Supp. 2005). On this question, the trial court found that it was in the child's best interest that appellant's parental rights be terminated and that appellant was unreasonably withholding his consent. In making this determination, the trial court quoted from *In re Adoption of K.M.C.*, 62 Ark. App. 95, 97, 969 S.W.2d 197, 199 (1998):

> In making a decision of whether to terminate the parental rights of a party, the trial court had a duty to look at the entire picture of how that parent discharged his duties as a parent, the substantial risk of serious harm the parent imposed, and whether or not the parent was unfit. *Waeltz v. Arkansas Department of Human Services, supra.* Any evidence having probative value as to the present or prospective fitness of a parent is admissible to determine whether consent has been unreasonably withheld. *Lindsey v. Ketchum*, 10 Ark. App. 128, 661 S.W.2d 453 (1983).

In *In re Adoption of K.M.C.*, this court reversed the trial court's finding that the teenage biological father did not unreasonably withhold his consent to the adoption contrary to the best interest of the child,

holding that in making a determination of whether to terminate a party's parental rights, the trial court had to look at the *entire picture,* including past actions prior to the child's birth, in order to attempt to make an accurate prediction of the future.

Here, the majority assumes that the trial court terminated appellant's parental rights "based solely on the fact that he is incarcerated." But this is an incorrect reading of the trial court's decision. That is not the entire picture. In her letter opinion, the trial judge stated:

> The child, Allen, was born on August 30, 1999 to Allen Henderson and Racquel Mitchell. The parents were never married nor has paternity been established. Paternity is not disputed in this matter as the petition states Mr. Henderson is the biological father.
>
> Three [sic] days after the birth of the child, the father was incarcerated in the Arkansas Department of Correction. Mr. Henderson was convicted of aggravated robbery and possession of a firearm. He was sentenced to serve 10 years. He will be eligible for parole December 2006. This current incarceration is the second incarceration for the Respondent, now age 26. When Mr. Henderson was age 17, he served a period of 25 months in prison and was 20 years old when he returned.
>
> The Petitioner was appointed the guardian of this child January 2001 and he has remained in the custody of Ms. Callis since that date. It is conceded the Respondent has had no substantial contact with this child and that Ms. Callis has made no effort to determine where the Respondent was located. She was aware both parties were incarcerated, Mr. Henderson in an Arkansas facility and Ms. Mitchell either in Florida or Tennessee.
>
> . . . .
>
> The Respondent here has been incarcerated for approximately eight and a half (8 ½) years between the ages of 17-26. He will not be eligible for parole until December 2006 and with a transport date in April 2007, if he is awarded parole. The child, Allen, is now 6 years of age. By the time the Respondent may be released from his present sentence, the child will be almost 8 years. The majority of this time has been in the home of the petitioner. According to the testimony of Ms. Callis, the child has thrived in her home.

It is clear that the trial judge looked at the "entire picture" of how appellant has discharged his duties as a parent in determining that he was unreasonably withholding his consent to the

adoption. The trial judge did not simply base the termination of appellant's parental rights upon his current incarceration; rather, she noted that appellant had previously served twenty-five months in prison before this, his second, incarceration. At the time of the entry of the order, appellant had been in prison for eight and a half of his twenty-six years, almost one-third of his entire life and practically all of his adult life. He entered prison at age seventeen for twenty-five months and returned to prison at age twenty, four days after the birth of the child. Another year has now passed with appellant still in prison. He may or may not be granted timely parole from his second prison sentence.

Although it is unclear why appellant went to prison the first time, the second time was for aggravated robbery and possession of a firearm, both serious offenses. Appellant asked the trial court not to judge him on who he was but rather to judge him on the man he now is and the man that he intended to be in the future; however, his track record as an adult does not bode well for his future. It is apparent that the trial court took his past actions prior to the child's birth into consideration. Appellant's criminal actions, which have landed him in prison for virtually all of his young adult life, certainly spoke louder than his words to the trial court, and for this reason, I cannot say that the trial court's decision was clearly erroneous. Appellant probably does want to have a relationship with his son, but his own history does not indicate either that he will have a stellar future or that he will in fact be able to provide for his son. Simply wanting to provide for a child is different from actually providing for a child. As a result of his anti-social and criminal conduct, appellant has never had any meaningful contact with his child for the child's entire life. Appellee is the only person the child has known as a parental figure. Unfortunately, appellant has *never* been a part of his child's life. Now it is unfair to ask a seven-and-a-half year old child, having waited his own entire young life, to continue to wait and languish in an uncertain home situation for a yet to be determined additional amount of time to see if appellant can get his own life together to parent his son. I submit that the best interest the majority is considering in its decision is not the same best interest the trial court considered. The adoption would give the child the stability of remaining in Callis's home, the only parental figure he has known since he was fifteen months old. Therefore, I cannot say that the trial judge was clearly erroneous in determining that appellant had unreasonably withheld his consent for adoption.

The majority gratuitously asserts that appellee has a "moral and legal obligation to refrain from engaging in conduct that alienates the child from appellant or that severs the parent-child relationship." Frankly, no authority is asserted for this as a legal proposition and as a moral proposition, it is beyond the scope of our appellate review since we are not an ecclesiastical review body. Further, in its opinion, the majority is unduly harsh on Ms. Callis, stating that although she did not contact appellant to encourage the parental relationship, she certainly knew where to find him when she wanted to adopt his son. A fairer comment would be to praise Ms. Callis for stepping into this child's life in the absence of either of his parents. With neither parent available to parent him, Ms. Callis willingly took on this challenge and provided the child with a stable, and by all accounts, thriving, environment.

The decision of the trial court was not clearly erroneous.