
# ARKANSAS COURT OF APPEALS

DIVISIONS I, II, and IV
No. CV-17-418

| | |
|---|---|
| TIMOTHY BRINKLEY AND DORLETHA BRINKLEY LAMBERT<br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered: November 15, 2017<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JV-15-173]<br><br>HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## KENNETH S. HIXSON, Judge

Appellants Dorletha Brinkley Lambert and Timothy Brinkley appeal from the termination of their parental rights to their three children, T.M.1, T.M.2, and T.M.3, who are now ages nine, eight, and six. On appeal, Dorletha argues that there was insufficient evidence to support the termination of her parental rights because there was a failure of proof as to the statutory grounds found by the trial court. In his appeal, Timothy also challenges the sufficiency of the evidence, arguing that there was insufficient proof of the statutory ground found by the trial court pertaining to him. In addition, Timothy argues that the trial court erred in proceeding on the petition to terminate his parental rights because he was not appointed counsel until immediately before the termination hearing. Finally, Timothy contends that it was error to terminate his parental rights because he was not served with the case plan or relevant pleadings, and because his attendance or

participation was not secured at any hearing before the termination hearing. We affirm the termination of Dorletha's parental rights. However, based on our conclusion that the trial court clearly erred in finding sufficient proof of a statutory ground as to Timothy, we reverse the termination of his parental rights.

We review termination of parental rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case was initiated by appellee Arkansas Department of Human Services (DHS) when it filed a petition for emergency custody of the three children on May 11, 2015. When the petition was filed, the children were living with Dorletha in Jonesboro, Arkansas, and Timothy was incarcerated in Texarkana, Texas. An affidavit of a family service worker stated that the three children had been left unsupervised and locked out of their house for

more than two hours, and when Dorletha came home she told the worker that she had been at her aunt's house across town. Dorletha was arrested and charged with three counts of first-degree endangering the welfare of a minor. On the same day the petition was filed, the trial court entered an ex parte order for emergency custody of the three children.

The trial court entered a probable-cause order on May 12, 2015. In the probable-cause order, the trial court ordered the parents to cooperate with DHS, comply with the case plan, remain drug free, submit to a drug-and-alcohol assessment, and complete parenting classes. The parents were also ordered to maintain stable housing and employment, and to resolve all outstanding criminal matters.

On June 30, 2015, the trial court entered an adjudication order adjudicating the children dependent-neglected. The goal of the case was reunification.

A review order was entered on November 3, 2015, wherein the trial court found that Dorletha was in noncompliance with the case plan due to a positive drug screen and her failure to attend drug treatment. The order indicated that Timothy did not appear at the hearing, and the trial court found that Timothy had participated in none of the case plan.

On April 28, 2016, the trial court entered a permanency-planning order finding that Dorletha was in compliance with the case plan but needed to resolve her criminal matters, including a DWI charge. The order again indicated that Timothy did not appear at the hearing, and the trial court found that Timothy had participated in none of the case plan. In the permanency-planning order, the goal of the case continued to be reunification with Dorletha. However, in a fifteen-month-review order entered on July 21, 2016, the trial

3

court authorized DHS to file a petition to terminate parental rights. In that order, it noted that Timothy again did not appear, and under section 8, "The court finds that the parents have participated in the case as follows," the trial court noted that Dorletha was currently incarcerated and facing criminal charges for both DWI and aggravated assault; Timothy was not mentioned at all.

DHS filed a petition to terminate both parents' parental rights on September 14, 2016. The termination hearing was scheduled for October 18, 2016. However, on the day of the scheduled termination hearing, the trial court entered an order of continuance wherein it rescheduled the hearing for November 18, 2016, appointed counsel to represent Timothy at the hearing, and instructed counsel to arrange for Timothy's transportation from jail to the hearing. The termination hearing was held on November 18, 2016, with both Dorletha and Timothy present and represented by counsel.

On March 2, 2017, the trial court entered an order terminating Dorletha's and Timothy's parental rights to the three children. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the trial court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i) & (ii) (Repl. 2015). The trial court also found, with respect to Dorletha, clear and convincing evidence of the following two statutory grounds under subsection (b)(3)(B):

> (i)*(a)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct

the conditions that caused removal, those conditions have not been remedied by the parent.

. . . .

(vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

The trial court found that Dorletha had been incarcerated seventeen times during the case, had consistently minimized her arrests, and had a long and unresolved history of alcohol abuse. As to Timothy, the trial court found under subsection (b)(3)(B)(iv) that he had abandoned the juveniles.

DHS caseworker Tina Green testified at the termination hearing. Ms. Green testified that Dorletha has had issues with alcohol abuse throughout the case, which was in large part the reason for Dorletha being arrested and incarcerated seventeen times for various offenses. According to Ms. Green, in the past several months Dorletha had been convicted of DWI, driving on a suspended license, and two counts of aggravated assault. Dorletha was last arrested two weeks before the termination hearing, and she remained in jail awaiting transfer to a court-ordered inpatient treatment facility. Ms. Green indicated that Dorletha had completed a previous treatment program, but with unsuccessful results, and that Dorletha minimized and made excuses for her criminal troubles.

Ms. Green stated that, after the children were removed, Dorletha remarried and now has stable housing. Ms. Green further acknowledged that Dorletha had been fairly compliant with the case plan as far as "checking the boxes," but that she had not remained

5

sober or resolved her criminal issues. Ms. Green stated that one of the assault charges against Dorletha arose from an incident where Dorletha had cut her husband with a razor. Ms. Green also believed that Dorletha has mental-health issues. Ms. Green was concerned that the children's safety and welfare would be at risk if they were returned to their mother's custody, and she testified that the children are adoptable.

Ms. Green testified that Timothy has been incarcerated from the outset of the case, and she was not aware of him ever asking for DHS services or asking to visit the children. The only contact Ms. Green had with Timothy was through a letter he sent after being served with the termination petition, wherein he asked to be present for the termination hearing. Ms. Green stated that the children could not be safely placed with either parent due to both parents' incarceration, and she thought termination of both parents' parental rights was in the best interest of the children.

Dorletha testified and acknowledged being incarcerated, with her most recent charge being public intoxication. Dorletha testified that after her children were removed from her home she "started drinking real heavy and getting into trouble because it felt like [she] lost everything." However, Dorletha stated that she loves her children and that, were she not incarcerated, they could be returned to her.

Timothy testified that he was incarcerated in September 2014 for a battery conviction and that his earliest release date would be in September 2017, which was ten months after the termination hearing. Timothy stated that he was served with a copy of the original emergency petition in prison on May 21, 2015. However, Timothy testified that he was never served with, nor did he ever receive, any order, notices, or any type of

communication from DHS or the court for the next fifteen-plus months. Timothy testified that he was not provided a copy of the case plan or notice of any of the interim hearings, and that he was never offered any services by DHS. The first time he received any communication from DHS was when he was served with the petition for termination of his parental rights on or about September 15, 2016. Timothy stated that, during that fifteen-month period, he was indigent and that nobody had asked him if he wanted a lawyer to represent him. After Timothy was served with the petition for termination, he wrote a letter requesting counsel and was appointed counsel. Timothy stated that he had not abandoned his children and did not want his parental rights terminated.

We first address Dorletha's argument on appeal, which is that the trial court clearly erred in finding statutory grounds to terminate her parental rights. The first ground found by the trial court was that, under Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, the children were adjudicated dependent-neglected and had been out of Dorletha's custody for twelve months, and that despite meaningful DHS efforts to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent. Dorletha argues that this ground was not sufficiently proved because there was a lack of evidence that she failed to remedy the conditions causing removal. Dorletha asserts that the condition that caused removal was inadequate supervision of the children, while the proof supporting the trial court's order was not inadequate supervision but rather Dorletha's alcohol abuse and frequent incarcerations, which were problems unrelated to the condition that caused removal.

The remaining ground found by the trial court was that, under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*, other factors or issues arose demonstrating that the return of the children to Dorletha was contrary to the children's welfare, and that despite the offer of appropriate family services, the parent manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent the return of the juveniles to the parent's custody. Dorletha contends that the trial court erred in finding that this ground was satisfied because DHS failed to prove that it offered appropriate family services for Dorletha's mental-health issues, which she claims contributed significantly to her persistent criminal troubles. For these reasons, Dorletha submits that the order terminating her parental rights should be reversed.

Only one ground is necessary to terminate parental rights. *Wafford v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 299, 495 S.W.3d 96. We uphold the termination of Dorletha's parental rights based on our conclusion that the trial court did not clearly err in finding that DHS proved the "other factors" ground under subsection (b)(3)(B)(vii)*(a)* of the termination statute.

In this case there can be no doubt that other factors arose after the children were removed from Dorletha's custody, which included her persistent alcohol abuse, even after completing alcohol rehabilitation, and her ongoing criminal troubles that resulted in seventeen incarcerations during the case. Dorletha's incarcerations compromised her ability to visit the children, and she remained in jail at the time of the termination hearing. Dorletha does not appear to contest the sufficiency of the proof as to these other factors that showed the juveniles could not be safely returned to her custody, but instead claims that

DHS failed to offer appropriate services. We cannot agree. The record demonstrates that Dorletha did receive DHS services throughout this case, including a rehabilitation program that was unsuccessful in remedying her problem with alcohol. The testimony of the caseworker demonstrated that Dorletha's alcohol abuse and related criminal problems were the factors preventing the return of the children to her custody, and the trial court found that Dorletha manifested the incapacity or indifference to remedy these issues. Although there was some testimony suggesting that Dorletha also had mental–health issues, these issues were not the basis for the termination. We hold that the trial court did not clearly err in its finding that appropriate family services were offered to Dorletha, and we affirm the termination of her parental rights based on the "other factors" ground.

We now turn to Timothy's appeal of the termination of his parental rights. Timothy argues that the trial court clearly erred in finding that he had abandoned his children, which was the only statutory ground pled in support of DHS's termination petition.[1] Timothy also argues that his termination should be reversed because he was not appointed counsel until shortly before the termination hearing, and because DHS failed to serve him with the case plan or any pleadings (other than the initial dependency-neglect petition and termination petition) or secure his attendance or participation in any of the hearings before

---

[1] DHS did not allege in its petition the "imprisonment" ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii), which allows for termination when the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. At the termination hearing, DHS moved to allow the pleadings to conform with the evidence to permit it to rely on the unalleged "imprisonment" ground to justify termination. However, the trial court denied the motion. Therefore, our review is limited to the only statutory ground alleged by DHS in the petition and found by the trial court, which was abandonment.

the termination hearing. We agree on this record that the trial court clearly erred in finding that Timothy had abandoned the children as defined by Arkansas Code Annotated section 9-27-303(2)(A), and therefore we reverse the termination of his parental rights on that basis.

Arkansas Code Annotated section 9-27-303(2)(A) contains the definition of "abandonment," and it provides:

> (2)(A) "Abandonment" means:
>    (i)  The failure of the parent to provide reasonable support for a juvenile and to maintain regular contact with a juvenile through statement or contact when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future;
>    (ii)  The failure of a parent to support or maintain regular contact with a child without just cause; or
>    (iii)  An articulated intent to forego parental responsibility.

The evidence in this case showed that Timothy was in prison when the children were taken into DHS custody and remained in prison throughout the entirety of this proceeding. Timothy did receive notice of the emergency-custody petition while in prison. However, there is no evidence that Timothy was served with the emergency order of custody as required by Arkansas Code Annotated section 9-27-314(c)(1)(A).[2] So the only

---

[2]The dissenting opinion suggests that Timothy did receive the emergency-custody order. However, from our review of the record and the briefs, we conclude otherwise. The summons sent to Timothy at the beginning of the case states that "a lawsuit has been filed against you" with proof that he was served with the summons and complaint. The proof of service does not indicate that Timothy received the emergency order, which would typically appear at the "other" section of the document, which was left blank. At trial, Timothy testified that he received the petition. In appellant's brief, he states that he only received a copy of the petition and not the order. And this does not appear to be disputed by DHS, who states in its brief that "Brinkley's failure to visit the children occurred despite being on notice that the Department was requesting custody of his children. He was served with a *summons and petition* on June 2, 2015, which clearly explained that 'the children were removed from the physical custody of Lambert.' Brinkley's own testimony further confirmed that he received the *petition*." (emphasis ours).

information that the record reflects that Timothy had was that a 72-hour hold of the children had been taken, with no proof that there had been any court order of removal. Subsequent to that notice, Timothy received no assistance, guidance, or even minimal contact from DHS as to what he needed to do to comply with the case plan or contact his children for over fifteen months. In fact, it is undisputed that Timothy never even received the case plan, and that despite that omission, the trial court's orders repeatedly found him to be in noncompliance with a case plan of which he had no knowledge. By the DHS caseworker's own testimony, DHS had no contact with Timothy at all throughout the case and offered no services.

Although appropriate services is not an element of the statutory abandonment ground, we conclude that the complete lack of services, communication, or guidance by DHS in this case is relevant in deciding whether Timothy abandoned his children.

In *Friend v. Arkansas Department of Human Services*, 2009 Ark. App. 606, 344 S.W.3d 670, we wrote:

> Although imprisonment imposes an unusual impediment to a normal parental relationship, it is not conclusive on the issue of termination. *Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). Nevertheless, a parent's imprisonment does not toll his responsibilities toward his child. *Malone v. Ark. Dep't of Human Servs.*, 71 Ark. App. 441, 30 S.W.3d 758 (2000). Tolling a parent's *obligations to comply with reunification orders* while he is in jail would be contrary to the goal of the juvenile code to provide permanency for the child. *Id.*; *see also Zgleszewski v. Zgleszewski*, 260 Ark. 629, 542 S.W.2d 765 (1976). *The appropriate inquiry where a parent has been ordered to comply with a court's reunification orders and is incarcerated is whether the parent utilized those resources available to maintain a close relationship with the child. Malone, supra.*

2009 Ark. App. 606, at 12−13, 344 S.W.3d at 677 (emphasis added.) Although *Zgleszewski*, *supra*, cited above, involved the adoption of a child by a stepparent and was decided under

prior law, the supreme court in that case characterized abandonment as an indication that the parent deserted, forsook entirely, or relinquished all connection with or concern in the child.

In *Bradbury v. Arkansas Department of Human Services*, 2012 Ark. App. 680, 424 S.W.3d 896, the appellant's parental rights were terminated based on the trial court's finding that he had abandoned the child. Even though the appellant had been incarcerated during the majority of the case, we stated that whether his incarceration constituted abandonment under the statute was questionable. More importantly, however, we affirmed on the basis that DHS had also alleged the "other factors" statutory ground and that, although the trial court made no specific finding on this ground, it was nonetheless proved. In holding in our de novo review that the "other factors" ground was proved, we relied on evidence that the appellant had failed to comply with the case plan or avail himself of DHS services, and that he had an explosive temper and was facing a possible prison sentence of thirty years.

That cannot be said in the present case. In stark contrast to the appellant in *Bradbury*, Timothy received no services from DHS, nor was he even provided with the case plan or any orders of the court, so it cannot be said that he failed to avail himself of services or was in willful noncompliance. Furthermore, unlike *Bradbury*, in this case the only statutory ground alleged by DHS and found by the trial court was that Timothy had abandoned his children.[3] The trial court's findings in the termination order in support of abandonment were as follows:

---

[3]See footnote 1.

The father has had no contact with the department during the pendency of this case, and he has not visited with the juveniles during that period. The father had no just cause. No evidence that he ever requested counsel prior to the TPR, or that he requested services at any time.

Limiting our analysis to this single ground, as we must, we conclude that the trial court clearly erred in this regard. Timothy testified that, although he was incarcerated during the entire proceedings, he did not abandon his children, and during his incarceration he was not included as a participant in the case despite the fact that DHS had actual knowledge of his location and address. We hold that this does not rise to the level of abandonment under a clear-and-convincing standard as defined by Arkansas Code Annotated section 9-27-303(2)(A), and therefore we reverse the termination of Timothy's parental rights.[4]

Having concluded that there was a sufficient statutory ground to support the termination of Dorletha's parental rights, we affirm the trial court's termination order as to her. Based on our holding that the trial court clearly erred in finding that the ground of abandonment alleged against Timothy was proved by clear and convincing evidence, we reverse the termination of Timothy's parental rights.

Affirmed in part; reversed and remanded in part.

ABRAMSON, VIRDEN, GLADWIN, GLOVER, and MURPHY, JJ., agree.

KLAPPENBACH, VAUGHT, and BROWN, JJ., dissent.

**LARRY D. VAUGHT, Judge, dissenting**. I join the majority opinion as to the appeal brought by the mother, Dorletha Brinkley, but I dissent because I would also affirm as to the father, Timothy Brinkley.

---

[4]Because we hold that there was insufficient evidence to support the termination, we need not specifically address Timothy's remaining arguments.

On May 11, 2015, the appellants' three minor children were removed from Dorletha's custody after she left them unsupervised. Timothy was incarcerated at the time and remained so throughout the case. It is undisputed that Timothy was adequately served with the petition for emergency custody.[5] It is further undisputed that Timothy did nothing, and the case proceeded without his presence or involvement until (DHS) filed a motion to terminate, at which time he was appointed counsel. The court terminated Timothy's parental rights based on the finding that he had abandoned the juveniles.

The issue on which the majority and I disagree is whether Timothy's incarceration, combined with DHS's failure to have any contact with him throughout the case, excuses his complete lack of interest in his children. I maintain that it does not and would affirm the circuit court's abandonment finding. Despite knowing that he has children and that those children had been taken into DHS custody, Timothy did nothing for approximately eighteen months. He did not contact DHS or the court; did not request visitation or other services; did not request an attorney or try to participate in the case; and most importantly, for more than a year and a half, Timothy made no effort to contact his children.

Under the statute, abandonment can be established by "[t]he failure of a parent to support or maintain regular contact with a child without just cause." Ark. Code Ann. § 9–27–303(2)(A)(Repl. 2015). Here, the majority accepts the circuit court's finding that Timothy had no contact with his children. The only issue we must resolve is whether Timothy's failure to maintain any contact with his children was "without just cause."

---

[5]While the majority and I disagree on whether the evidence also demonstrates that Timothy received the court's initial ex parte order granting emergency custody, that issue does not ultimately matter in determining whether he abandoned his children.

14

While the majority acknowledges that a finding that DHS provided "appropriate services is not an element of the abandonment statutory ground," it goes on to find that the lack of such services is "relevant in deciding whether Timothy abandoned his children." I disagree. DHS's failure to provide appropriate services (something that is not required in an abandonment case) has no bearing on whether a parent attempts to contact his or her children. The majority has not pointed to, and cannot point to, any particular services, the lack of which prevented Timothy from writing a letter or sending a birthday card to his children.

Although it is clear that Timothy made no effort whatsoever to maintain a relationship with his children, the majority holds that "this does not rise to the level of abandonment under a clear and convincing standard." I fail to see how Timothy could have done any less. Therefore, I fear that the majority is setting the precedent that an inmate can never legally abandon his or her child. Incarceration does not make a person helpless, and Timothy has never claimed that his incarceration or lack of DHS services prevented him from attempting to contact his children. This decision devalues the efforts incarcerated parents take every day to maintain the bond with their children.

It also defies legislative intent. The practical effect of the majority's decision will be to require DHS to provide family services to incarcerated parents who have demonstrated no interest in maintaining a parent-child relationship. The Arkansas General Assembly chose not to include this requirement. While several other statutory grounds for termination require a showing that DHS provided "meaningful efforts," the abandonment ground does not. It is reasonable to infer that the Arkansas General Assembly determined that it would

be a waste of time and resources to require DHS to provide expensive and time-consuming family services to a parent who shows no interest in being a parent. I dissent from the majority's decision because it effectively grafts a "meaningful efforts" requirement onto the abandonment ground in defiance of legislative intent and at the expense of the children at the heart of all such cases who deserve permanency.

KLAPPENBACH and BROWN, JJ., join.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant Dorletha Brinkley Lambert.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant Timothy Brinkley.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.