2010 Ark. App. 785

**Kenneth BLANCHARD, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 10–688.**

Court of Appeals of Arkansas.

Nov. 17, 2010.

Leah Beth Lanford, Little Rock, for appellant.

Melissa Bristow Richardson, Bristow & Richardson P.L.L.C., Jonesboro, and Tabitha Baertels McNulty, Little Rock, for appellee.

KAREN R. BAKER, Judge.

Appellant Kenneth Wayne Blanchard appeals the Madison County Circuit Court's adjudication of his daughters, L.B., B.B., and S.B., dependent-neglected.[1] On appeal, he asserts that there was insufficient evidence to support the court's determination that he sexually abused L.B. We affirm.

This case began on January 25, 2010, when appellee Arkansas Department of Human Services (DHS) took emergency custody of L.B., B.B., and S.B. in response to a telephone call placed by Madison County Deputy Nikki Rayl to the Child Abuse Hotline. DHS filed a petition for emergency custody and dependency-neglect on January 27, 2010, against appellant and Donna Cleveland alleging that juvenile sisters, L.B., B.B., and S.B. were dependent-neglected based upon abandonment, and/or sexual abuse, and/or neglect as defined in Arkansas Code Annotated section 9–27–303 (Supp.2009). The supporting affidavit reflected that Deputy Rayl said that she and Kevin Estes had spoken to the three girls at their school. B.B. and L.B. were twelve-year-old twins, and S.B. was nine years old. L.B. disclosed sexual abuse by her father, describing him ejaculating in her vagina and mouth. Deputy Rayl found her to be very credible. Deputy Rayl also spoke to B.B. and S.B. about the allegations of sexual abuse. B.B. told her that she had not been sexually abused and knew nothing about appellant abusing either of her sis-

---

1. The order also found that L.B., B.B., and S.B., were dependent-neglected due to the actions of their mother, Donna Cleveland; however, she is not a party in this appeal.

ters. B.B. appeared nervous and not as credible to the deputy. S.B. stated that she would not be surprised if one of her sisters stated that appellant was touching them inappropriately. S.B. stated that if a friend of hers was being touched inappropriately, she would tell someone like a teacher, but not if it was a family member. Deputy Rayl talked with a teacher who had taught all three sisters and was told that of the three, L.B. was the most credible. Upon learning that L.B.'s statements appeared credible and due to the risk factors, DHS placed a seventy-two (72) hour hold on the three sisters asserting that the conditions were such that continuing in the care of their parent presented an immediate danger of severe maltreatment.

On January 27, 2010, the trial court heard the petition ex parte. The court found that (1) there was probable cause to believe that the juvenile sisters were dependent-neglected and that it was contrary to their welfare for them to remain with their present custodian; (2) immediate removal of the juveniles from the present custodian was necessary to protect their health and safety; (3) DHS had been involved with the family since December 4, 2006; (4) there had been three previous sexual abuse calls, two of which were screened out, and the third was unsubstantiated; and (5) that reasonable efforts had been made to prevent removal of the juveniles. In the probable-cause order of January 28, 2010, the court held that the emergency conditions that necessitated removal of the children from appellant's custody continued and that it was contrary to the juveniles' welfare to return them home to him. The order also reflected that the mother, allegedly living out of the state, was not to be allowed any contact with the juveniles, and that DHS should make every effort to locate her. On February 10, 2010, by agreed order, appellant was allowed one hour per week DHS-supervised visitation with B.B. and S.B., but no visitation was permitted with L.B.

The adjudication hearing commenced on March 5, 2010. During the hearing, appellant's counsel announced that he would be calling B.B. and S.B. as witnesses. The attorney ad litem asked for a continuance in order to prepare the girls for testimony and the court reset the hearing for April 2, 2010.

On April 2nd, the report to the prosecuting attorney was introduced into evidence, without objection, including the victim statement of L.B. who stated that she lived with appellant and her two sisters and that the abuse had been occurring since she was two years old. She said that appellant would wait until her sisters were asleep and force her to go into his bedroom and that if she did not do what he wanted, he would hit her. L.B. stated that her father would "force [her] to suck his penis ... [and] stick his thing in [her vagina]." Also, she stated that he would ejaculate "whitish clear stuff" inside her and would tell her to "hold on I'm almost finished." She added that he would ejaculate in her mouth and attempt to make her swallow it; however, she would "hold it [in her mouth] until he leaves and then [she would] spit it out and go wash [her] mouth out and brush [her] teeth." Being "sick and tired of [the sexual abuse]" was her reason for finally disclosing what had been happening. She felt that her father should be "put in prison" for sexually abusing her. L.B. stated that she did not want to go back home and that she wanted to go live with her best friend. She said her father told her that he would hit her if she told anyone about the abuse, and she felt he took advantage of her because she had heart problems. L.B. said that she had never had any type of sex with anyone before.

Kevin Estes, an investigator for the Arkansas State Police Crimes Against Children Division trained in child forensic interviewing, testified regarding his investigation into the sexual abuse allegations made by L.B. He said that L.B. told him that appellant had sexual intercourse with her and that appellant had her perform oral sex on him. Mr. Estes made a true finding that sexual abuse had occurred based on the victim's interview that he and Deputy Rayl conducted together. He testified that the specific things that caused L.B. to seem credible were that (1) she did not have a reason to lie about the allegations, (2) her demeanor was consistent with her being truthful, and (3) the detail with which she described the events.

Deputy Nikki Rayl of the Madison County Sheriff's Office testified that L.B.'s allegations that appellant had intercourse with her and that he required her to perform oral sex on him were credible. The deputy stated that L.B. was visibly upset during the interview. While L.B. did not know certain terms, she was descriptive in her explanation, and Deputy Rayl stated that L.B. said appellant had intercourse with her and required her to perform oral sex on him. Deputy Rayl also interviewed B.B. and S.B. with Mr. Estes. She also interviewed appellant who, a week after the initial interview, claimed that L.B. fabricated the allegations in an attempt to be allowed to live with her friend. Deputy Rayl testified that she did not believe appellant was truthful during the interview, that he had very withdrawn body language, and that he was inconsistent about things that were discussed. Also, Deputy Rayl stated that she never disclosed which daughter made the sexual allegations, but whenever appellant discussed the allegations, he specifically named L.B.

Sue Stockton, a sexual-assault nurse examiner for the Children's Safety Center in Springdale, Arkansas, testified that she examined L.B., B.B., and S.B. and that their exams were normal. She added that the absence of a detectable injury does not however mean that there has not been penetration as defined by Arkansas law, and ninety (90) percent of the time the exams are normal when there have been previous disclosures of abuse.

Suzanne Cowan, a family service worker for DHS, testified that the girls were doing really good in foster care. She stated that there had not been any contact with their mother, but that appellant had been in contact with her weekly. Ms. Cowan testified that appellant was not in counseling, but that he had been invited to upcoming parenting classes. She stated that there had been previous hotline calls or investigations, but that they had been unsubstantiated. A visit to the home revealed some areas where corrections were needed, and DHS also recommended certain testing and treatment for appellant. Ms. Cowan said that appellant's weekly visits with B.B. and S.B. had been going well. Ms. Cowan stated that DHS was recommending no reunification and adoption because of the seriousness of the allegations of sexual abuse and the true finding.

Michelle Child testified that appellant, L.B., B.B., and S.B. lived with her for almost a year from the middle of 2007 until the middle of 2008. She said that they started staying with her because the relative they were staying with complained that they were using too much electricity. Ms. Child stated that she had no knowledge of appellant abusing the girls. She testified that she had talked with B.B. since the girls had been removed from appellant's home and that B.B. told her that neither she nor S.B. had anything to do with being removed from their dad's home. B.B. told Ms. Child that she want-

ed to return to her dad's home. Ms. Child testified that she had also talked with L.B. and asked her why she had made the allegations up, to which L.B. told her in a quiet voice, "I don't know." Ms. Child said that L.B. gets quiet when she is lying. She said that her relationship with appellant when he and the girls lived with her was platonic.

Appellant testified that he had never abused any of his daughters and that he believed L.B. made the allegations of sexual abuse as a result of an argument during the Christmas break. He asserted that he informed his girls that they could not do everything that they wanted to do because of his limited income and his inoperable vehicle. When L.B. told him that his efforts were not good enough, appellant testified that he told her she needed to talk with someone else about another place to live. He stated that later that same afternoon he apologized to her. Appellant also stated that he found out his girls were spending the night with a friend who had teenage brothers living in the home, which was contrary to the information they had given him that only the female friend and her parents lived in the home. Appellant stated that L.B. had lied to him about that, and he punished her by refusing to let her spend the night with that friend anymore.

L.B., B.B., and S.B. were not called as witnesses at the hearing. At the conclusion of the hearing, the court found that the juveniles were dependent-neglected: (1) L.B. because she was sexually molested by appellant; and (2) B.B. and S.B. because they were "in harm's way because of the molestation of [L.B.]." The court said that the burden of proof was by a preponderance of the evidence and lower than in a criminal proceeding. In its oral ruling, the trial court weighed the testimony and evidence and addressed the various arguments raised by appellant to refute the allegations raised by L.B. Specifically, the

court noted that the graphic details furnished by L.B. were not the type of details that a twelve-year-old child would even have the knowledge to fabricate, absent some inappropriate contact. It is from this adjudication and disposition order that appellant brings this appeal.

Adjudication hearings are held to determine whether the allegations in the petition are substantiated by the proof. Ark.Code Ann. § 9–27–327(a)(1) (Repl. 2009). A dependent-neglected[8] juvenile includes a child who is at substantial risk of serious harm as a result of sexual abuse. Ark.Code Ann. § 9–27–303(18)(A)(iii) (Repl.2009). The term "sexual abuse" includes sexual contact by a caretaker to a person younger than eighteen years of age. Ark.Code Ann. § 9–27–303(51)(C)(i). Under the juvenile code, "sexual contact" means any act of sexual gratification involving touching, directly or through clothing, of the sex organs, buttocks, or anus of a juvenile, or the breast of a female juvenile. Ark.Code Ann. § 9–27–303(52)(A)(i). Direct proof that an act was done for sexual gratification is not required if it can be inferred that the desire for sexual gratification was a plausible reason for the act. *Rounsaville v. State*, 374 Ark. 356, 288 S.W.3d 213 (2008).

The juvenile code requires proof by a preponderance of the evidence in dependency-neglect proceedings. Ark.Code Ann. § 9–27–325(h)(2)(B) (Supp.2009); *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark.App. 364, 43 S.W.3d 196 (2001). We review the circuit court's findings of fact de novo and will not set them aside unless they are clearly erroneous. *Brewer, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Porter v. Ark. Dep't of Health &*

*Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). With regard to testimonial evidence, the appellate court gives a high degree of deference to the circuit court, which is in a far superior position to observe the parties before it, and we defer to the trial judge's evaluation of the credibility of witnesses. *See Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 215, 40 S.W.3d 286, 292–93 (2001); |₉*Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). Consequently, unless determined to be clearly erroneous, a trial court's finding will be left undisturbed on appeal. *Porter*, 374 Ark. at 183, 286 S.W.3d at 692.

Appellant argues that as DHS failed to prove that the allegations of sexual abuse were true, the trial court erred in so finding. In challenging the sufficiency of the evidence, appellant targets three areas: (1) the trial court's reliance upon the supporting documentation attached to the report to the prosecuting attorney; (2) the failure of L.B. to testify at the hearing; and (3) the credibility determinations made by the trial court.

■ The report to the prosecuting attorney and the attached documentation, containing summaries of interviews with L.B., B.B., S.B., and others, was admitted into evidence at the hearing without objection. While admitting that the failure to object precludes preservation of the issue of admissibility of hearsay statements for appeal, appellant nonetheless argues that "the statute [Ark.Code Ann. § 12–18–701(f) (Repl.2009)] is ... significant because it demonstrates that credibility cannot be brought to the forefront and judged by the trial court by reading a summary of a statement given by an alleged victim and loosely transcribed by an investigator." We cannot review this assignment of error because it is incumbent upon the parties to raise arguments initially to the circuit court in order to give that court an opportunity to consider the issue. *Bell v. Misenheimer*, 2009 Ark. 222, 308 S.W.3d 120. To do otherwise would place appellate courts in the position of reversing the circuit court for reasons not addressed by that court. *See id.* We see no distinction, and none is offered, |₁₀between an assignment of error based upon hearsay and Ark.Code Ann. § 12–18–701(f) in the admissibility of the report, because both would require us to address arguments made for the first time on appeal. *Donahue v. Arkansas Dep't of Human Servs.*, 99 Ark.App. 330, 260 S.W.3d 334 (2007).

■ Appellant asserts that in every case affirming "a circuit court's finding of sexual abuse based upon the sole statement of a child, the child provided in-court testimony, and the appellate courts specifically noted that the trial court was therefore in a better position to resolve issues regarding the child's credibility." From this, appellant argues that the trial court could not have made credibility determinations because L.B. did not testify and there were numerous inconsistencies in her allegations based upon the written statement and other contradicting evidence. Again, as appellant did not object to the introduction into evidence of the report to the prosecuting attorney that had the written statements attached, we will not review this argument raised for the first time on appeal. *Donahue v. Arkansas Dep't of Human Servs.*, 99 Ark.App. 330, 260 S.W.3d 334 (2007). Additionally, Deputy Nikki Rayl and Kevin Estes testified to the assertions in L.B.'s statement without objection. When a non-testifying witness's statements in a document are admitted into evidence, and such statements are cumulative to other evidence admitted without objection, we will not reverse. *Meins v. Meins*, 93 Ark.App. 292, 218 S.W.3d 366 (2005).

Finally, appellant sifts, in detail, the evidence presented at the hearing, makes credibility determinations in his favor, and argues that the totality of the evidence does not support the trial court's finding that he sexually abused L.B. To find merit in appellant's assertions would require this court to act as a super fact-finder or second guess credibility determinations of the trial court, and that we will not do. *K.C. v. Arkansas Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884; *Albright v. Arkansas Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007).

Appellant does not address the trial court's adjudication of B.B. and S.B. dependent-neglected; therefore, we deem that any arguments regarding them have been abandoned. The failure to develop a point legally or factually is reason enough to affirm the trial court. *Barker v. State*, 2010 Ark. 354, 373 S.W.3d 865.

We therefore affirm the adjudication order.

Affirmed.

VAUGHT, C.J., and GLOVER, J., agree.