2011 Ark. App. 360

**Michael TENNY, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,** **Appellee.**

**No. CA 10–1260.**

Court of Appeals of Arkansas.

May 11, 2011.

Therese M. Free, Little Rock, for appellant.

CLIFF HOOFMAN, Judge.

This is an appeal from an order terminating appellant's parental rights to his daughter, A.T., born March 12, 2009. Michael Tenny's counsel has filed a no-merit brief and a motion to withdraw as counsel pursuant to *Linker–Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i), asserting that there are no issues of arguable merit to support an appeal. The clerk of this court

attempted to mail a copy of counsel's motion and brief to Tenny's last known address informing him of his right to file pro se points for reversal. Tenny's last known address was a Department of Correction facility where he is no longer incarcerated. We affirm the order terminating Tenny's parental rights and grant counsel's motion to withdraw.

 Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of ₂the health and well being of the child. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark.App. 526, 2010 WL 2522197. Grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

We agree with counsel's brief that there were no adverse rulings at the termination hearing other than the ultimate decision to terminate Tenny's parental rights. Thus, the only issue for appeal is whether there was clear and convincing evidence to support the termination order.

The trial court determined that it was in the child's best interest to terminate Tenny's parental rights and found clear and convincing evidence of two grounds for termination, Ark.Code Ann. § 9–27–341(b)(3)(B)(i) and (ix)*(a)(3)(B)(i)* (Repl. 2009). The trial court determined that termination was in the child's best interest considering the likelihood that she would be adopted and the potential harm caused by returning her to Tenny's custody. Ark. Code Ann. § 9–27–341(b)(3)(A). The family service worker testified that he did not believe A.T. had any developmental or medical issues that would prohibit her from being adopted. ₃He testified that she was a friendly, easy baby who was favorable for adoption statistically because she was healthy, Caucasian, and under the age of two. He testified that the home she was in was a foster-to-adopt home, and the foster parents had expressed an interest in adopting A.T.

 Regarding the potential harm of returning A.T. to Tenny, the DHS family service worker testified that Tenny had not been in compliance with the court orders and case plans because he had been incarcerated throughout the case. DHS did not know Tenny's anticipated release date from incarceration, although Tenny testified that he hoped to be released within one month. DHS noted that Tenny had been incarcerated for 13 months of A.T.'s 17–month life. The family service worker testified that even if Tenny were released that day, he did not believe that Tenny would be in a position to take custody of A.T. We find that there is sufficient evidence to support the trial court's finding that termination was in the child's best interest.

 There is also sufficient evidence to support the statutory ground for termination found by the trial court in Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)*(a)(3)(B)(i)*— that the parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected the child to aggravated circum-

stances. Aggravated circumstances means "a juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)*(a)(3)(B)(i)*.4 DHS exercised an emergency hold on A.T. on July 17, 2009, upon finding her in a home with a methamphetamine lab and arresting her parents. The circuit court granted a petition for emergency custody. The affidavit of the family service worker stated that the drug task-force officer reported that the methamphetamine lab was one of the largest he had seen. In an order filed September 28, 2009, the court adjudicated A.T. dependent-neglected due to abuse, neglect, and parental unfitness. The court found that A.T. was exposed to illegal drugs according to a hair follicle test that was positive for marijuana and that she was exposed to noxious chemicals as a result of her presence in a home that contained an operational methamphetamine lab. In termination cases, a challenge to the finding of abuse must be made, if at all, in an appeal from the adjudication hearing. *Krass v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 245, 306 S.W.3d 14 (citing *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722). Tenny did not appeal from the adjudication order. In the termination order, the court found that exposure to drugs and chemicals constituted grounds for termination because the parents had subjected A.T. to aggravated circumstances. We agree that A.T. was subjected to aggravated circumstances in the form of "extreme or repeated cruelty." Thus, there is sufficient evidence to support termination of Tenny's parental rights upon this ground.

Proof of only one statutory ground is sufficient to terminate parental rights. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, 2010 WL 2522197. Therefore, the circuit court's findings on the other ground for termination need not be discussed.

Based on our review of the record and the brief submitted to us, we conclude that counsel has complied with Rule 6–9(i) and that the appeal is without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VAUGHT, C.J., and ROBBINS, GRUBER, and BROWN, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

I cannot in good conscience agree that a merit appeal of the termination of Michael Tenny's parental rights to A.T., born March 12, 2009, would be wholly frivolous. *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup.Ct. R. 6–9(i), require an explanation of why each adverse ruling would not be a meritorious ground for reversal. The brief before me utterly fails in this regard.

First, Tenny's appellate counsel does not discuss the trial court's "reasonable efforts" finding. Tenny was imprisoned during the majority of this case. An ADHS witness testified at the termination hearing that ADHS was unable to provide reunification services to Tenny, despite the fact that the Washington County Circuit Court twice denied ADHS's motion to terminate reunification services. For Tenny, there was no staffing, no case plan, no effort to arrange visitation, and no reunification services. Ultimately, the trial court forgave this flagrant disregard of its orders

and blamed Tenny for ADHS's failure to provide services. I cannot conceive of how this finding would not be worthy of challenging in a merit brief. It is worth noting that, without ADHS assistance, Tenny underwent substance-abuse treatment and attempted to take parenting classes on his own. Whether Tenny manifested the incapacity or indifference to rehabilitate his circumstances in light of his efforts in prison could certainly support a nonfrivolous appeal.

Second, at the August 18, 2010 termination hearing, the only evidence regarding the expected duration of Tenny's incarceration came from Tenny himself, who testified that he had already been approved for parole and would be released during the next month. The trial court apparently found this testimony to be credible, and our clerk's unsuccessful attempt to furnish Tenny with a copy of appellate counsel's brief at the Arkansas Department of Correction proved that Tenny's testimony was truthful. Accordingly, the validity of the trial court's termination of Tenny's parental rights on the grounds stated in Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii) (Repl. 2009), that Tenny would be incarcerated for a "substantial period of the juvenile's life," is worthy of a merit brief. Significantly, the trial court did not make an adequate finding on this element; it merely stated that Tenny had criminal "issues" to deal with—he would face an additional two years' probation. I submit that a merit brief on how this finding falls short of the requirements of Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii) would not be wholly frivolous. In fact, I cannot see how Tenny's case is different in any material way from a similarly situated appellant in *Fredrick v. Arkansas Department of Human Services,* 2009 Ark. App. 652, 2009 WL 3208740, where we ordered a merit brief. This court should be bound under the law to treat similarly situated litigants the same.

Finally, the trial court's finding regarding the exposure of the children to the meth lab—which the majority has chosen to cite—does not survive close scrutiny. The sole evidence on this issue came from an affidavit attached to ADHS's petition for emergency custody. The trial court found that Tenny "expose[d] the child to aggravated circumstances and extreme cruelty in having her in a house with a humongous meth lab." However, there was no evidence that the meth lab was operational; the affiant merely stated that the drug task force "discovered multiple components of a meth lab." There is also no evidence that the child was exposed to any chemicals; the child was examined and drug-tested at Washington Regional Medical Center, and no evidence of methamphetamine or precursors were reported as being found in the child's system. In fact, after the examination, the child was declared "healthy." While it is true that the child's hair follicle test revealed that the child had been exposed to marijuana, there is no evidence that it was Tenny, and not the child's mother, Jennifer Ralston, or some other person, who exposed the child to the drug. Given Ralston's history of drug addiction and the tender age of the child at the time she entered ADHS custody (she was only four months old), it is even possible that the child's exposure to marijuana occurred while she was in utero. In short, these key findings are almost entirely speculation and conjecture. Again, I submit that a merit brief in which the validity of these findings is discussed would not be wholly frivolous.

Certainly I do not condone mistreatment of children in any way. However, to fulfill our obligations as appellate judges, we must look at the facts of this case dispassionately. Here, we have a natural par-

ent who accompanied the mother of his child to a house belonging to her relatives. Present in the house were components used to manufacture methamphetamine. Tenny is now out on parole, under the supervision of the probation department. ADHS gave him no opportunity to regain custody of his child, perhaps in no small part because, as the majority noted, the child was "a friendly, easy baby who was favorable for adoption statistically because she was healthy, Caucasian, and under the age of two."