2012 Ark. App. 215

**Kenneth BLANCHARD, Appellant**

v.

**ARKANSAS DEP'T OF HUMAN SERVICES and B.B., L.B., and S.B., Minors, Appellees.**

No. CA 11–1159.

Court of Appeals of Arkansas.

March 14, 2012.

Leah Beth Lanford, Little Rock, for appellant.

Melissa Bristow Richardson, Jonesboro, for appellee.

WAYMOND M. BROWN, Judge.

This is an appeal from a September 2, 2011 order by the Madison County Circuit Court terminating the parental rights of appellant Kenneth Blanchard to his children, B.B. (DOB 4/20/97), L.B. (DOB 4/20/97), and S.B. (DOB 8/15/00). Appellant asserts that there was insufficient evidence to support the circuit court's finding that termination of his parental rights (TPR) was in the best interests of L.B., B.B., and S.B. We disagree and affirm.

## Background

On January 25, 2010, L.B. told one of her teachers that appellant had sexually abused her. Madison County Deputy Nikki Rayl and an investigator from the Crimes Against Children Division interviewed L.B. and B.B., who were twelve-year-old twins, and S.B., who was nine years old. L.B. described in detail the alleged sexual abuse, and Deputy Rayl found her to be very credible. B.B. said that she had not been sexually abused and knew nothing about appellant abusing either of her sisters, but Deputy Rayl felt she appeared nervous and was not as credible. S.B. stated that she would not be surprised if one of her sisters said that appellant was touching them inappropri-ately and stated that if a friend of hers was being touched inappropriately, she would tell someone like a teacher, but not if it was a family member. Deputy Rayl found S.B. to be "one of the saddest children I've ever seen." A teacher who had taught all three girls told Deputy Rayl that L.B. had always been the most credible. It was determined that continuing in the care of appellant presented an immediate danger of severe maltreatment, and the Arkansas Department of Human Services (DHS) placed a seventy-two-hour hold on all three children.

On January 27, 2010, the circuit court found that there was probable cause to believe that L.B., B.B., and S.B. were dependent-neglected, that it was contrary to their welfare to remain with their present custodian, and that immediate removal was necessary to protect their health and safety. The January 27, 2010 probable-cause order also reflected the court's finding that DHS had received three previous sexual-abuse calls regarding the family, two of which had been screened out and one of which was unsubstantiated, and that reasonable efforts had been made to prevent removal of the children. On February 10, 2010, by agreed order, appellant was allowed one hour per week of DHS-supervised visitation with B.B. and S.B., but no visitation was permitted with L.B.

After hearings on March 5[1] and April 2, 2010, L.B., B.B., and S.B. were adjudicated dependent-neglected. In its April 8, 2010 order, the circuit court found by clear and convincing evidence that L.B. was sexually abused by appellant, that appellant had subjected all three children to aggravated circumstances due to that abuse, and that the children were at substantial risk

---

1. During the March 5, 2010 hearing, appellant's counsel announced that he would be calling B.B. and S.B. as witnesses, and the attorney ad litem asked for a continuance in order to prepare the girls for testimony. The court rescheduled the hearing for April 2, 2010.

of serious harm if left in the home with appellant. The court ordered that the children remain in DHS custody, set concurrent goals of reunification and adoption, ordered appellant to have supervised visitation with S.B. and B.B. but no contact of any kind with L.B.; and directed DHS to obtain a copy of a family-services court file from Oregon, where the children were in foster care in 2005. The court further ordered appellant to cooperate with DHS, keep them informed of his current address and phone number, and pay $44 per week in child support. In its order, the circuit court noted that the mother had no contact with the children for years, had not paid child support, and had done nothing to otherwise help support the children, and had thereby abandoned them.[2]

Appellant appealed the April 8, 2010 order, arguing that there was insufficient evidence to support the court's determination that he sexually abused L.B. This court affirmed the finding that appellant sexually abused L.B. and, because appellant did not address the adjudication of B.B. and S.B. as dependent-neglected, affirmed that finding as well.[3]

A permanency-planning hearing was held on January 7, 2011, and the court found that appellant had not complied with court orders and the DHS case plan in that he had bought "an inappropriate (sexual) music CD for the girls;" his efforts had not been genuine or sustainable; he had done some counseling and had attended some visits, but had not had a psychosexual evaluation; and he had not taken any steps to make his home safe for the girls. The court further found that DHS

had made reasonable efforts towards reunification, but that it was in the best interests of L.B., B.B., and S.B. to change the goal of the case to termination of parental rights and adoption.

DHS filed a petition for termination of parental rights on January 13, 2011, alleging several grounds for termination, including the following:

The juveniles were adjudicated by the court to be dependent-neglected ... after having been removed from the custody of their father ... [and] have continued to be out of the custody of mother and/or father since that time; and despite a meaningful effort by [DHS] to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; that is ... the father has failed to obtain the appropriate assessments or counseling or to acknowledge his culpability in the actions that caused the children to be removed from his custody;

. . . .

The Court has found that the father subjected the children to aggravated circumstances, due to sexual abuse by father to [L.B.], putting all 3 of the children at substantial risk of serious harm.

A TPR hearing was held on August 26, 2011,[4] one year and seven months after L.B., B.B., and S.B. were first removed from appellant's custody. At the hearing, the circuit court heard testimony from appellant; L.B., B.B., and S.B.; Suzanne Cowan, a DHS worker on the case; Jan Wallis, an adoption specialist for the De-

2. The TPR order from which this appeal was taken also terminated the parental rights of the girls' mother. However, she is not a party to this appeal, and we do not address the findings and orders of the circuit court as to her.

3. Blanchard v. Ark. Dep't of Human Servs., 2010 Ark. App. 785, 379 S.W.3d 686.

4. The TPR hearing was originally scheduled for April 1, 2011, but had to be postponed because appellant was ill and in the intensive-care unit.

partment of Children and Family Services (DCFS) in Madison County; and Denis Gibson, the supervisor at Madison County DCFS. The circuit court found that DHS had shown by clear and convincing evidence that TPR was in the girls' best interests, including consideration of the likelihood of adoption and the potential harm if the girls had continued contact with appellant. The court further found that statutory grounds had been proven, including (1) that the girls had been adjudicated dependent-neglected and had remained out of appellant's custody for twelve months, and despite a meaningful effort by DHS, the conditions that caused the removal had not been remedied; and (2) the court had found that appellant sexually abused L.B. Based on these findings, the circuit court ordered that appellant's rights be terminated. Appellant filed a timely notice of appeal.

### Legal Standard and Statutory Framework

 |₆Cases involving the termination of parental rights are reviewed de novo on appeal.[5] An order terminating parental rights must be based on clear and convincing evidence.[6] The grounds for termination of parental rights must also be proven by clear and convincing evidence.[7] The appellate court will not reverse the trial court's decision unless the court's

finding of clear and convincing evidence is clearly erroneous.[8] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[9] The appellate courts give a high degree of deference to the trial court, as the trial court is in a far superior position to observe the parties before it and judge the credibility of the witnesses.[10]

The purpose of the TPR statute is to provide permanency in a child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[11] Parental |₇rights may be terminated if clear and convincing evidence shows that termination is in the child's best interest, including consideration of the likelihood of adoption and potential harm, specifically addressing the effect on the health and safety of the child caused by continuing contact with the parent.[12] Additionally, one or more statutory grounds must be shown by clear and convincing evidence.[13]

Termination of parental rights is an extreme remedy, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[14] Clear and convincing evidence is

5. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

6. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

7. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark.App. 247, 240 S.W.3d 626 (2006).

8. *Id.*

9. *Gregg v. Ark. Dep't of Human Servs.*, 58 Ark.App. 337, 952 S.W.2d 183 (1997).

10. *Dinkins, supra.*

11. Ark.Code Ann. § 9–27–341(a)(3) (Supp. 2011).

12. Ark.Code Ann. § 9–27–341(b)(3) (Supp. 2011).

13. *Id.*

14. *Tenny v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 360, 383 S.W.3d 876.

that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.[15]

### Discussion

#### I. *Statutory Grounds for TPR*

As set forth above, the circuit court adjudicated L.B., B.B., and S.B. dependent-neglected by order entered on April 8, 2010, making this specific finding:

> The Court finds by clear and convincing evidence that L.B. was sexually abused by her father and that all 3 children are at a substantial risk of harm if left in home with father. The Court finds by clear and convincing evidence that father has subjected the children to aggravated circumstances, due to sexual abuse by father to L.B.

This court affirmed the circuit court's decision in its entirety.[16]

Ark.Code Ann. § 9–27–341(b)(3)(B)(vi)(a) provides that parental rights of one or both parents may be immediately terminated if the juvenile division of the circuit court finds that a juvenile or a sibling is dependent-neglected as a result of sexual abuse. In its order granting TPR, this was one of the grounds relied upon by the circuit court, and appellant concedes that it was established. Because Arkansas law clearly provides that only one ground for termination is necessary,[17] no reversible error exists with regard to the statutory-grounds prong of TPR.[18]

#### II. *Best–Interest Finding*

On appeal, appellant challenges only the circuit court's finding that TPR was in the best interests of L.B., B.B., and S.B. However, there was sufficient evidence to support the trial court's ruling with regards to both the adoptability and potential-harm factors. Our supreme court has addressed these best-interest factors as follows:

> With regard to the potential-harm factor, we agree with the court of appeals's reasoning in *Lee v. Ark. Dep't of Human Servs.,* 102 Ark.App. 337, 285 S.W.3d 277 (2008), that the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. Instead the harm analysis should be conduced in broad terms. We further cite with approval the court of appeals opinion, *McFarland v. Ark. Dep't of Human Servs.,* 91 Ark.App. 323, 210 S.W.3d 143 (2005), that there is no requirement that the aforementioned [best-interest factors of adoptability and potential harm] . . . be established by clear and convincing evidence. Rather, after consideration of all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child.[19]

We do not find that the circuit court clearly erred in finding that there was clear and convincing evidence that TPR was in the best interests of L.B., B.B., and S.B. Regarding the girls' adoptability, Suzanne Cowan testified that B.B. had caused disruption in the foster home where she, L.B., and S.B. were currently placed, but deferred to Jan Wallis to give a opinion on adoptability. Jan Wallis testi-

---

15. *Id.*

16. *Blanchard, supra.*

17. *Reid v. Ark. Dep't of Human Servs.,* 2011 Ark. 187, 380 S.W.3d 918.

18. Appellant concedes that the statutory ground for TPR cannot be contested on appeal.

19. *Id.* at 13.

fied that the girls were adoptable, that a lot of families were looking for sibling groups, and that she had a possible family in mind that she believed would be a good fit: a family that was hoping to adopt sibling girls around the ages of L.B., B.B., and S.B. Wallis stated that she was aware of B.B.'s behavioral issues, but that with "the right type of parent that is very loving but very disciplined, has a lot of structure," B.B.'s disruptive behavior would not keep her from being adopted. Wallis testified that she would help ensure a successful placement by providing family counseling to ease the adjustment.

■ The circuit court, after hearing all three girls testify and observing them in person, agreed with Wallis and concluded that all three girls were "extremely" adoptable. We give due regard to the opportunity of the trial court to judge witnesses' credibility, and in matters involving the welfare of young children, we give great weight to the trial judge's personal observations.[20]

With regard to the potential-harm factor, the juvenile code specifically provides that it is grounds for immediate TPR if a court finds a juvenile or her sibling dependent-neglected as a result of sexual abuse perpetrated by the parent.[21] It is also grounds for TPR if a court finds that the parent has subjected a juvenile to aggravated circumstances, which includes sexual abuse.[22] It is not disputed that these grounds for TPR were established through the circuit court's findings in the April 8, 2010 order, which was affirmed by this court. It would seem obvious that three sibling girls around the same age would face potential harm if placed back in the custody of a father who has been found to have sexually abused one of them. In making a finding of sexual abuse grounds for TPR, the legislature recognized as much. However, there was other evidence to support the circuit court's finding of potential harm in a best-interest analysis.

Suzanne Cowan testified that in her opinion, TPR was in the best interests of the children because appellant had been found to have sexually abused L.B. She testified that although DHS had provided various services to appellant, including psychological and psychosexual evaluation, parenting classes, drug screens, and group counseling, she did not believe that L.B., B.B., and S.B. could be safely placed back with appellant. Cowan further testified that on a visit, appellant had brought music to B.B. that had sexual content.

Although appellant continued to deny that he sexually abused L.B., L.B. maintained that he had abused her and that she did not want to go home with him because she believed the abuse would continue. Moreover, S.B., who at first testified that appellant had never abused her and that she wanted to go home with him, informed her attorney during a break that she had not told the truth, returned to the stand, and testified that appellant *had* sexually abused her and that she did not want to live with him. S.B. testified that she had not intended to tell any investigators that appellant abused her until his rights had been terminated. Denis Gibson, the supervisor at Madison County DCFS, testified that S.B. previously had told her that appellant molested her (S.B.). Gibson testified that S.B. said she would be willing to go to the safety center and talk to an

**20.** *Ullom v. Ark. Dep't of Human Servs.,* 340 Ark. 615, 12 S.W.3d 204 (2000).

**21.** Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)*(a)(3)(B).*

**22.** Ark.Code Ann. § 9–27–341(ix)(a)(3).

interviewer about it if appellant's rights were terminated, but that "she was afraid to tell that her dad had molested her and then have to go home [with him]."

In coming to its decision on TPR, the circuit court "set aside the S.B. thing" because it did not "know what to think about that right now," since the testimony conflicted with S.B.'s earlier testimony. However, the circuit court did not make a credibility finding; rather, it avoided doing so, set aside the testimony, and based its decision on the other available evidence. On de novo review, we observe that although the circuit court chose not to consider S.B.'s later testimony, it was yet further evidence that would support a finding that TPR was in the best interests of the children.[23]

After a review of the entire evidence, we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, we hold that the circuit court did not clearly err in finding that TPR was in the best interests of L.B., B.B., and S.B. or in terminating appellant's parental rights.

Affirmed.

GLADWIN and GLOVER, JJ., agree.

---

23. On de novo review, we examine the record as a whole but may not change what testimony was believed true or untrue by the trial judge. *See, e.g., Dansby v. Dansby*, 87 Ark. App. 156, 189 S.W.3d 473 (2004).