2012 Ark. App. 680

Sidney BRADBURY, Appellant

v.

ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.

No. CA 12–636.

Court of Appeals of Arkansas.

Nov. 28, 2012.

Leah Lanford, Arkansas Public Defender Commission, for appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, for appellee.

Chrestman Group, PLC, by: Keith L. Chrestman, attorney for minor children.

WAYMOND M. BROWN, Judge.

Appellant Sidney Bradbury's parental rights to D.D. (DOB 6/13/08) and C.B. (DOB 4/18/11) were terminated by order filed on May 14, 2012, in Garland County Circuit Court. On appeal he argues that the circuit court's termination of his parental rights should be reversed because there was insufficient evidence that he abandoned D.D. He further argues that, based on evidence that D.D. and C.B. should be kept together, the termination of his parental rights as to C.B. should also be reversed. We disagree and affirm the circuit court's order.

Appellant and Ashley Bradbury, who were married throughout the duration of this case, are the biological parents of D.D. C.B. is Mrs. Bradbury's son by a different man: appellant was incarcerated when C.B. was born, and court-ordered DNA testing confirmed that he is not C.B.'s biological father. When C.B. was born on April 8, 2011, he and his mother tested positive for illegal drugs. The Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on C.B. a week later and placed him in the foster home where he has lived throughout the duration of this case. At the time of C.B.'s removal, appellant was incarcerated and D.D. was in the custody of appellant's relatives.

After C.B.'s removal, in May 2011, Mrs. Bradbury was sent to a residential drug-treatment center. In June 2011, DHS allowed D.D. to join her mother at the treatment center, in an effort to help Mrs. Bradbury prepare to parent her children.

On July 6, 2011, Mrs. Bradbury left the treatment center against court orders, abandoning D.D. DHS took D.D. into emergency custody and placed her in the foster home where C.B. was living. C.B. was adjudicated dependent-neglected on June 20, 2011, and D.D. was adjudicated dependent-neglected on August 12, 2011.

In October 2011, Mrs. Bradbury, who was then pregnant with her third child, was incarcerated on drug charges. In December 2011, appellant was released from prison and placed on probation. On January 13, 2012, a permanency-planning hearing was held. Based on a report filed by DHS, the circuit court found that in spite of reasonable efforts by DHS to finalize a permanency plan,[1] it was in the best interest of D.D. and C.B. that the goal of the case be changed to adoption. On February 4, 2012, appellant was arrested and charged with |3criminal attempt to commit aggravated robbery and second-degree battery, and was incarcerated on a $50,000 bond.

On February 14, 2012, DHS filed a petition for termination of parental rights (TPR), seeking termination of both parents' rights as to D.D. and C.B. At that time, both appellant and Mrs. Bradbury were incarcerated at the Garland County Detention Center. A hearing was held on May 14, 2012, and the circuit court heard testimony from appellant; Mrs. Bradbury; Heather Fendley, a DHS caseworker; Shirley Watkins, an adoption specialist;

and Kim Carter, the foster parent of both D.D. and C.B. Following the hearing, the circuit court granted TPR as to both parents. On May 23, 2012, appellant timely filed a notice of appeal from the TPR order.

### Standard of Review

Termination of parental rights is an extreme remedy, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[2] The purpose or the TPR statute is to provide permanency in a child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[3] Parental rights may be terminated if clear and convincing evidence shows that termination is in the child's best interest, including consideration of the likelihood of adoption and potential harm, specifically addressing the |4effect on the health and safety of the child caused by continuing contact with the parent.[4] The statute only requires the trial court to consider potential harm, and this analysis may be conducted in a forward-looking manner and considered in broad terms,[5] including the harm the child suffers from the lack of stability in a permanent home.[6] Additionally, one or more

---

1. Services listed by the circuit court included case management, an offer of anger-management education, psychological evaluations, home assessments, counseling, visitation, transportation services, and employment services.

2. *Tenny v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 360, 383 S.W.3d 876.

3. Ark.Code Ann. § 9–27–341(a)(3) (Supp. 2011).

4. Ark.Code Ann. § 9–27–341(b)(3) (Supp. 2011).

5. *Rossie–Fonner v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 29, 388 S.W.3d 38 (citing *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722 (2009)).

6. *Id.* (citing *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008)).

statutory grounds must be shown by clear and convincing evidence.[7]

 Cases involving the termination of parental rights are reviewed de novo on appeal.[8] The grounds for TPR must be proved by clear and convincing evidence,[9] which is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.[10] The appellate court will not reverse the trial court's decision unless the court's finding of clear and convincing evidence is clearly erroneous.[11] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire |₅evidence is left with a definite and firm conviction that a mistake has been committed.[12] The appellate courts give a high degree of deference to the trial court, as the trial court is in a far superior position to observe the parties before it and judge the credibility of the witnesses.[13]

## I. *Statutory Grounds*
### *D.D.*

 Appellant argues that there was insufficient evidence to prove that he abandoned D.D.; in particular, he claims, there was no evidence of intent as required by Arkansas Lode Annotated section 9–27–303(2) (Supp.2011). Whether appellant's incarceration throughout the case constitutes abandonment under the statute is questionable. In its petition for TPR, however, DHS alleged another statutory ground.

> [T]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juveniles to the custody of the parents is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parents have manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parents' circumstances that prevent return of the juveniles to the custody of the parents.[14]

The circuit court did not make a finding specific to this statutory ground in its TPR order, but this court, in its de novo review, may hold that other grounds for TPR that were alleged |₆in the termination petition were proved, even if they were not stated in the circuit court's order.[15]

In its TPR order, the circuit court found that DHS had made reasonable efforts to rehabilitate appellant and correct the conditions that caused removal, facilitate the goal of reunification, and finalize a permanency plan for D.D. and C.B., and

**7.** Ark.Code Ann. § 9–27–341(b)(3)(B) (Supp. 2011).

**8.** *Yarborough v. Ark. Dep't of Human Servs.,* 96 Ark.App. 247, 240 S.W.3d 626 (2006) (citing *Dinkins v. Ark. Dep't of Human Servs.,* 344 Ark. 207, 40 S.W.3d 286 (2001)).

**9.** *Id.*

**10.** *Tenny, supra.*

**11.** *Blanchard v. Ark. Dep't of Human Servs.,* 2012 Ark. App. 215, 395 S.W.3d 405.

**12.** *Id.* (citing *Gregg v. Ark. Dep't of Human Servs.,* 58 Ark.App. 337, 952 S.W.2d 183 (1997)).

**13.** *Dinkins, supra.*

**14.** Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*) (Supp.2011).

**15.** *Allen v. Ark. Dep't of Human Servs.,* 2011 Ark. App. 288, 384 S.W.3d 7; *Ratliff v. Ark. Dep't of Human Servs.,* 104 Ark.App. 355, 292 S.W.3d 870 (2009); *Smith v. Ark. Dep't of Human Servs.,* 100 Ark.App. 74, 264 S.W.3d 559 (2007). Cf. *Lewis v. Ark. Dep't of Human Servs.,* 2012 Ark. App. 154, 391 S.W.3d 695 (holding TPR clearly erroneous because the only ground alleged in petition and relied on by trial court was not applicable to appellant).

appellant does not contest this finding on appeal. Moreover, the record contains evidence to support the circuit court's finding that in spite of DHS's efforts, reunification with appellant would be contrary to the health, safety, and welfare of D.D. and C.B.

Appellant was first incarcerated when D.D. was approximately three months old (before C.B. was born), and was released on probation in December 2011, five months after D.D. was taken into DHS custody. However, he was only free for about two months during the entirety of the case and concedes that, during this time, he failed to comply with court orders or the case plan. Heather Fendley testified that appellant had not made any progress toward the goal of the case plan and had not worked diligently toward reunification, had demonstrated a continuing inability to maintain employment, stable housing, or transportation, had not formulated any plan to support the children, had failed to comply with the case plan or avail himself of services offered by DHS;[16] and had failed to maintain contact with the children throughout the case. Moreover, she stated that appellant exhibited an explosive temper that was also displayed by his other family members,[17] and at the time of the TPR hearing he was awaiting trial in August 2012, he was in jail on a $50,000 bond, and he faced a possible sentence of thirty years. Appellant's testimony contradicted some of this evidence, for example, he testified that he wrote D.D. letters, completed twenty hours of parenting classes, and had a house and car "in his name." However, the circuit court made a specific finding that Fendley's testimony was credible, and we defer to the circuit court on matters of credibility.[18] Because there was clear and convincing evidence on the "other factors" ground, the circuit court did not clearly err in finding that DHS proved statutory grounds for TPR as to D.D.

## C.B.

In its TPR order, the circuit court found that DHS proved by clear and convincing evidence that C.B. was adjudicated dependent-neglected and had continued to be out of the custody of his parents for twelve months, and that despite repeated reasonable efforts on the part of DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied by the parents.[19] Appellant concedes that this statutory ground for TPR was sufficiently proved. The only remaining question for this court, therefore, is whether the best-interest prong of TPR analysis was satisfied with regards to both children.

## II. Best Interest

At the TPR hearing, Shirley Watkins, a DHS adoption specialist, testified

16. Fendley testified that during the two months he was free, appellant did not have appropriate housing or transportation, failed to take required parenting classes, and failed to participate in individual counseling as directed by DHS. In addition, when appellant was released and had a chance to begin working towards reunification, just two months later he was re-incarcerated.

17. Fendley testified that appellant's mother and sister came to a DHS staffing and were "very, very aggressive, verbally aggressive, accusatory, [and] non compliant" to the extent that they were asked not to return. Fendley testified, "They just had a chip on their shoulder, felt like everyone was against them, that the drug use in the family should not be an issue, that [alleged abuse] should not have been an issue."

18. *Dinkins, supra.*

19. Ark.Code Ann. 9–27–341(b)(3)(B)(i)(*a*) (Supp.2011).

that D.D. and C.B. were both adoptable and that she had families applying to adopt who were interested in sibling groups. In addition, Hassan Salloukh, therapist for D.D., testified that permanency was in the children's best interest and that TPR would not be detrimental to them. Kim Carter, the children's foster parent, testified that D.D. and C.B. had developed a very strong, loving bond and that it was in their best interest to stay together.[20] Furthermore, Heather Fendley testified that the risk of potential harm to D.D. and C.B. if returned to appellant was evidenced by his continuing inability to maintain employment, stable housing, or transportation, inability to formulate a plan to support the children, failure to comply with the case plan or to avail himself of services offered by DHS; failure to maintain contact with the children, and failure to stay out of jail during the course of the case.

Appellant testified that he wanted C.B. too, even though C.B. wasn't his biological child. However, it was established that appellant was facing a likely sentence of thirty years in prison, and Heather Fendley testified that appellant's family had been adamant that "they didn't want anything to do with C.B. because of his heritage and that D.D., basically, should not be made to be around him because he was not white."[21] Fendley stated that D.D. had been abused while living in the home of appellant's relatives, was "terrified when she goes someplace that she's used to going with those people," and had "a lot of trust and adjustment issues with adults" as a result. Fendley further testified that

appellant's relatives "are not stable individuals able to provide a secure and safe environment to foster trust for [D.D.]." The circuit court made a specific finding that Fendley, Salloukh, and Carter were credible, and we defer to the circuit court on matters of credibility.[22]

Appellant does not directly challenge the circuit court's finding that TPR was in the best interest of D.D. and C.B. Rather, his only argument hinges on our court finding that there was no statutory ground to terminate his parental rights as to D.D. Specifically, he contends that, because there were no statutory grounds for TPR with regard to D.D., he should retain his parental rights as to her, and because of the evidence of the siblings' strong bond, it was not in C.B.'s best interest to be separated from D.D., so TPR was not appropriate for D.D. either. However, having held that a statutory ground for TPR as to D.D. was proved, we do not find this argument persuasive. In light of the evidence presented, the circuit court's best-interest ruling was not clearly erroneous. We therefore affirm the circuit court's grant of TPR as to both D.D. and C.B.

Affirmed.

ROBBINS and GRUBER, JJ., agree.

---

**20.** Carter testified that D.D. had embraced the role of big sister and that being separated from C.B. "would be the undoing" of D.D. Carter testified that she had worked with infants and toddlers in a home setting for over twenty years and had a master's degree in education of children from birth to thirty-six months of age.

**21.** C.B. is biracial.

**22.** *Dinkins, supra.*