

Cite as 2013 Ark. App. 702

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–13–656

| | |
|---|---|
| ANGELA SUE WEAR<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** December 4, 2013<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. J-2013-80]<br><br>HONORABLE THOMAS SMITH, JUDGE<br><br>AFFIRMED IN PART; DISMISSED IN PART |

**BILL H. WALMSLEY, Judge**

Appellant Angela Wear appeals from the Benton County Circuit Court's determination that her daughters, M.V. (DOB: 1-29-1999) and M.P. (DOB: 1-8-2001), were dependent-neglected. Wear argues that the trial court erred in its adjudication because there was insufficient evidence that she posed a safety risk to her children and that the trial court's order contains "errors." We affirm in part and dismiss in part.

On December 5, 2012, the Child Abuse Hotline received a report that M.V. had been raped by her mother's husband, Ramiro DeLaRosa-Paz, before he left for Guatemala in October 2012. The Siloam Springs Police Department began an investigation that led to Wear's arrest on January 31, 2013, for permitting the abuse of a minor. On February 1, 2013, the Arkansas Department of Human Services (DHS) initiated a seventy-two-hour hold on the children. Following an investigation, DHS found that the allegations of sexual abuse by

DeLaRosa-Paz were true. On February 4, 2013, DHS filed a petition for dependency-neglect, and an adjudication hearing was held April 16, 2013.

At the hearing, Wear testified that DeLaRosa-Paz, an illegal immigrant in this country for approximately ten years, was back in Guatemala because on October 19, 2012, she had kicked him out of her home for hitting her and M.V. Wear testified that DeLaRosa-Paz told her over the telephone on December 3, 2012, that he "had sex with" M.V. Wear reported it to police and claimed that she was told that nothing could be done because there is no extradition treaty between the United States and Guatemala.[1] According to Wear, she went to Guatemala to coax DeLaRosa-Paz back to the United States to be punished for sexually abusing M.V. Wear claimed that, while in Guatemala, she only pretended that she was not angry with DeLaRosa-Paz and lied to him when she said that they would be a family again. Wear testified that she let M.V., who knew nothing about Wear's plan, speak with DeLaRosa-Paz over the telephone so that he could ask for forgiveness and that he also asked M.V. whether she had reported him to the police. Wear testified that, during the conversation, she told M.V. that she could call DeLaRosa-Paz "Dad" if she wanted to and that she could tell him she loved him if she did. Wear conceded that she was still married to DeLaRosa-Paz but asserted that it was because she could not afford to file for a divorce.

Detective DeAndra Walter with the Siloam Springs Police Department testified that she responded to the initial report of sexual abuse in December 2012 and that on January 30,

---

[1]Guatemala is listed as one of the countries with which the United States has an extradition treaty. 18 U.S.C. § 3181 (2012).

2013, she received another report of a sexual assault on M.V. from Lakrisha Manjarrez, who was looking after Wear's daughters while Wear was in Guatemala. Wear's daughters had confided in Manjarrez about the sexual abuse perpetrated by DeLaRosa-Paz and told her that they were frightened because Wear had said she was bringing DeLaRosa-Paz back to live with them. Walter further testified that she arrested Wear upon her return to the United States and that, in an interview following the arrest, Wear told her that she had gone to Guatemala to persuade DeLaRosa-Paz to return to the United States so they "could get this straightened out." Walter also stated that Wear told her that, if DeLaRosa-Paz got the help he needed, she would consider reconciling with him. Walter testified that at no time did Wear tell her of any master plan to bring DeLaRosa-Paz back to the United States to face justice for raping her daughter. At the time of the interview, Walter viewed photographs taken while Wear was in Guatemala with DeLaRosa-Paz, and she testified that they appeared "pretty affectionate" toward each other.

The trial court concluded that M.V. and M.P. were dependent-neglected, and the judge remarked that Wear's thinking "was really, really, way, way, out there." Based on the girls' ages and on the attorney ad litem's assertion that the girls had expressed their desire to be with their mother as long as DeLaRosa-Paz was not around, the trial court ordered a trial placement with Wear and encouraged her to divorce DeLaRosa-Paz. In the adjudication order entered April 29, 2013, the trial court found that the girls were dependent-neglected based on Wear's failure to protect them.

On May 20, 2013, Wear moved for modification of the adjudication order pursuant

3

to Ark. R. Civ. P. 60. Wear attached a letter dated April 24, 2013, addressed to opposing counsel, in which her counsel had objected to the proposed order because it did not accurately reflect the trial court's findings in several respects.[2] In the motion, however, Wear complained only that the order did not reflect that DHS was directed to provide Intensive Family Services (IFS). On the same day that she requested modification, Wear filed a notice of appeal from the April 29 order. On June 11, 2013, the trial court amended the adjudication order to include reference to IFS. An amended notice of appeal was filed on June 20, 2013.

An adjudication order in a dependency-neglect proceeding is an appealable order. Ark. Sup. Ct. R. 6-9(a)(1)(a). In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Lipscomb v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 257. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* With regard to testimonial evidence, the appellate court gives a high degree of deference to the circuit court, which is in a far superior position to observe the parties before it, and we defer to the trial judge's evaluation of the credibility of witnesses. *Blanchard v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 785, 379 S.W.3d 686.

A dependent-neglected juvenile includes one who is at substantial risk of serious harm

---

[2]Wear did not agree with the word "forced," referring to M.V.'s speaking on the telephone with DeLaRosa-Paz, because the trial judge had said she "let" her speak with him. Also, Wear asserted that the trial court did not find a failure to protect in its oral ruling, so that language needed to be removed.

because of abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness to the juvenile or to a sibling. Ark. Code Ann. § 9–27–303(18)(A) (Supp. 2011). The statutory definition of "neglect" includes those acts or omissions of a parent that constitute failure to take reasonable action to protect the juvenile from abuse when the existence of this condition was known or should have been known. Ark. Code Ann. § 9–27–303(36)(A)(iii).

On appeal, Wear argues that the trial court clearly erred in finding that she posed a substantial risk of serious harm to her children because she was not the one who abused M.V.; she promptly reported the abuse to authorities; and she attempted to seek justice for her daughter. Further, Wear contends that, because DeLaRosa-Paz cannot legally reenter the country, there is no danger.

The evidence relied upon by the trial court showed that Wear failed to protect M.V. and M.P. Knowing that DeLaRosa-Paz had sexually abused M.V., Wear traveled to Guatemala in hopes of convincing him to return with her so that they could be a family again. Although Wear asserted that she went to Guatemala for the purpose of bringing DeLaRosa-Paz to justice, this involved a credibility determination that the trial court resolved against Wear. The trial court pointed out that Wear had not begun divorce proceedings against DeLaRosa-Paz. The trial court could have reasonably concluded that this was a good indication that Wear hoped the two would stay together, along with Wear's statements to Walter regarding a possible reconciliation. Although Wear maintains that DeLaRosa-Paz is no longer a danger to her children, Wear testified that DeLaRosa-Paz had been living in the United States illegally for ten years and that, as part of her plan to return with DeLaRosa-Paz

from Guatemala, she expected him to reenter the country illegally. The trial court could have reasonably concluded that DeLaRosa-Paz's status as an illegal immigrant was not a hindrance to his entering the United States.

Further, we are not persuaded by Wear's assertion that she did not abuse M.V. *See Churchill v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 530, ___ S.W.3d ___ (noting that a parent cannot avoid the legal consequences of a finding of dependency-neglect just because some of the acts or omissions might have been the fault of others). It is sufficient that Wear failed to take reasonable action to protect M.V. after she knew DeLaRosa-Paz had sexually abused her. Wear acknowledged that the sexual abuse of M.V. was traumatic, yet Wear facilitated a conversation between M.V. and her abuser during which she encouraged M.V. to call him "Dad" and tell him she loved him. The attorney ad litem conceded that the telephone call was not "a good parental decision." Thus, we cannot say that the trial court clearly erred in adjudicating M.V. and M.P. dependent-neglected. We affirm on this point.

Next, Wear argues that, although the adjudication order was modified to reflect that IFS would be provided, there was no correction of the other "errors." Because this court lacks jurisdiction, we do not reach the merits of this issue. Arkansas Supreme Court Rule 6–9(b)(1)(B) provides that the notice of appeal shall be signed by the appellant, if an adult, and appellant's counsel. Counsel signed the amended notice, but Wear did not. The Arkansas Supreme Court has required strict compliance with the appellant-signature requirement. *McPherson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 238. We therefore dismiss with respect to Wear's second point.



Affirmed in part; dismissed in part.

GLADWIN, C.J., and GRUBER, J., agree.

*Janet Lawrence*, for appellant.

*Tabitha B. McNulty*, Office of Chief Counsel; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.